1   Robert M. Schwartz (SBN 117166)
        (rschwartz@irell.com)
2   Victor Jih (SBN 186515)
        (vjih@irell.com)
3   Joshua C. Lee (SBN 268606)
        (jclee@irell.com)
4   Andrew J. Strabone (SBN 301659)
        (astrabone@irell.com)
5
6   IRELL & MANELLA LLP
7   1800 Avenue of the Stars, Suite 900
    Los Angeles, California 90067-4276
8   Telephone:   (310) 277-1010
    Facsimile:   (310) 203-7199
9
10  Attorneys for Defendants
    CBS Corporation and CBS Radio Inc.
11

12                  UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14

15  ABS ENTERTAINMENT, INC., an          )   Case No. 2:15-cv-6257-PA (AGRx)
    Arkansas corporation, each individually )
16  and on behalf of all others similarly )   Case Filed:  August 17, 2015
    situated,                            )   Trial Date:   None Set
17                                       )
18          Plaintiff,                   )   **MEMORANDUM OF POINTS AND**
                                         )   **AUTHORITIES IN SUPPORT OF**
19      v.                               )   **SPECIAL MOTION TO STRIKE BY**
                                         )   **DEFENDANTS CBS**
20  CBS CORPORATION, a Delaware          )   **CORPORATION AND CBS RADIO**
    corporation; CBS RADIO INC., a       )   **INC. UNDER CALIFORNIA CODE**
21  Delaware corporation; and DOES 1     )   **OF CIVIL PROCEDURE § 425.16**
22  through 10,                          )
                                         )   Date:        November 23, 2015
23          Defendants.                  )   Time:        1:30 p.m.
24                                       )   Place:       Courtroom 15 – Spring St.
                                         )   Before:      Hon. Percy Anderson
25                                       )
26  _____

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations
3945088

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..............................................................................................i

BACKGROUND FACTS ..................................................................................3

I. Congress and the Courts Have Consistently Refused to Create or Recognize a Performance Right for Pre-1972 Sound Recordings...................................................................................3

II. ABS Entertainment, Inc. Acquires a Library of Pre-1972 Recordings......................................................................................6

III. CBS Did Not Perform Plaintiff's Pre-1972 Sound Recordings. ..........6

THE ANTI-SLAPP STATUTE ........................................................................7

CBS IS ENTITLED TO PREVAIL ON THIS MOTION .......................................8

I. Plaintiff's Claims Arise From CBS's Protected Activity. ...................8

II. ABS Cannot Meet Its Burden To Show A Probability Of Prevailing On The Merits Of Its Claims. .............................................9

A. CBS Did Not Perform ABS's Pre-1972 Works. ......................9

B. ABS's Section 980 Claims Fail Because California Has Never Recognized a Public Performance Right for Sound Recordings. .........................................................12

i. California Has Never Recognized Any Public Performance Right for Commercially Released Sound Recordings. .........................................14

a. There Is No Common Law Public Performance  Right for Sound Recordings. ........................................................15

b. Offering a Sound Recording for Sale is a General Publication that Divests All Common Law Rights. ...........................18

ii. The California Legislature Did Not Create Any New Public Performance Right for Sound Recordings in 1982. ............................................19

iii. ABS's Reproduction, Distribution, and Other Claims Fail Because They Are Derivative of ABS's Performance Claims. ..........................................24

C. ABS Cannot Prevail on its Remaining Common Law Claims. ...................................................................................25

CONCLUSION...............................................................................................25

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088.

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bagdasarian Prods., LLC v. Capitol Records, Inc.*,
    No. B217960, 2010 WL 3245795 (Cal. Ct. App. Aug. 18, 2010) .......... 17, 18

*Blanc v. Lantz*,
    No. 547157, 1949 WL 4766 (Cal. Super. Ct. Sept. 30, 1949) ..................... 15

*California Assn. of Health Facilities v. Dep't of Health Servs.*,
    16 Cal. 4th 284 (1997) .................................................................................. 23

*Capital Records, LLC v. BlueBeat, Inc.*,
    765 F. Supp. 2d 1198 (C.D. Cal. 2010) .................................................. 17, 18

*Capitol Records v. Mercury Records Corp.*, 221 F.2d 657 (2d Cir.
    1955) ................................................................................. 5, 14, 16, 18

*Capitol Records, LLC v. Sirius XM Radio Inc.*,
    2014 WL 7387972 (Cal. Sup. Ct. Oct. 14, 2014) ................................. passim

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
    150 F.3d 132 (2d Cir. 1998) ....................................................................... 25

*Celotex Corp v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................... 7

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir.
    2000) ............................................................................................................. 25

*Cho v. Chang*,
    219 Cal. App. 4th 531 (2013) ....................................................................... 8

*Cinevision Corp. v. City of Burbank*,
    745 F.2d 560 (9th Cir. 1984) ........................................................................ 8

*Dowd v. City of Los Angeles*,
    28 F. Supp. 3d 1019 (C.D. Cal. 2014) ........................................................ 13

*Flo & Eddie v. Pandora*,
    2015 WL 5313052 (9th Cir. Sep. 9, 2015) ............................................. 1, 19

*Flo & Eddie v. Pandora*,
    No. 2:14-cv-07648, Order on Anti-SLAPP at 6 (C.D. Cal. Feb.
    23, 2015) ....................................................................... 8, 12, 13

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    2014 WL 4725382 (C.D. Cal. Sept. 22, 2014) .................................... passim

*FNB Mortg. Corp. v. Pac. Gen. Group*,
    76 Cal. App. 4th 1116 (1999) ..................................................................... 24

**Page(s)**

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13 (2007)..........................................................9

*Gilliam v. ABC,*
    538 F.2d 14 (2d Cir. 1976) ........................................................12

*Golding v. R.K.O. Pictures,*
    35 Cal. 2d 690 (1950)..........................................................15, 21

*Griffin v. J-Records,*
    398 F. Supp. 2d 1137 (E.D. Wash. 2005) ................................10

*Hall v. Time Warner, Inc.,*
    153 Cal. App. 4th 1337 (2007)....................................................9

*Harris v. Atl. Richfield Co.,*
    14 Cal. App. 4th 70 (1993)........................................................23

*Hecimovich v. Encinal School Parent Teacher Org.,*
    203 Cal. App. 4th 450 (2012)......................................................9

*In re J.W.,*
    29 Cal. 4th 200 (2002)..............................................................22

*Kelly v. Arriba Soft Corp.,*
    336 F.3d 811 (9th Cir. 2002)....................................................24

*Kramer v. Thomas,*
    2006 WL 4729242 (C.D. Cal. Sept. 28, 2006)........................24

*Lebas Fashion Imports of USA, Inc.* v. *ITT Hartford Ins. Grp.,*
    50 Cal. App. 4th 548 (1996)......................................................25

*Lone Ranger Television, Inc. v. Program Radio Corp.,*
    740 F.2d 718 (9th Cir. 1984)..............................................18, 19

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................................11

*Makaeff v. Trump Univ., LLC,*
    715 F.3d 254 (9th Cir. 2013)......................................................8

*Maljack Prod. v. UAV,*
    964 F. Supp. 1416 (C.D. Cal. 1997)......................................9, 10

*McIntyre v. Double-A Music Corp.,*
    179 F. Supp. 160 (S.D. Cal. 1959) ......................................15, 18

*Muniz v. United Parcel Serv., Inc.,*
    738 F.3d 214 (9th Cir. 2013)....................................................13

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

**Page(s)**

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002)..................................................................................8

*People v. S. Pac. Co.*,
209 Cal. 578 (1930)..................................................................................23

*People v. Zikorus*,
150 Cal. App. 3d 324 (1983)....................................................................22

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)..................................................................24

*Pryor v. Jean*,
2014 WL 5023088 (C.D. Cal., Oct. 8, 2014) ..........................................11

*RCA Mfg. Co. v. Whiteman*,
114 F.2d 86 (2d Cir. 1940)...............................................................passim

*Rogers v. Home Shopping Network, Inc.*,
57 F. Supp. 2d 973 (C.D. Cal. 1999)..........................................................7

*Schad v. Mount Ephraim*,
452 U.S. 61 (1981) .....................................................................................8

*Tamkin v. CBS Broad., Inc.*,
193 Cal. App. 4th 133 (2011)......................................................................9

*Teich v. Gen. Mills, Inc.*,
170 Cal. App. 2d 791 (1959)....................................................................15

*United States v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999).......................................................................7

*Varian Med. Sys., Inc. v. Delfino*,
35 Cal.4th 180 (2005).................................................................................3

*Ward v. Rock Against Racism*,
491 U.S. 791 (1989) ...................................................................................8

*Welco Electronics, Inc. v. Mora*,
223 Cal. App. 4th 202 (2014)....................................................................25

*Zachary v. W. Publ'g Co.*,
75 Cal. App. 3d 911 (Cal. Ct. App. 1977)...........................................14, 21

**Statutes**

15 U.S.C. § 301..........................................................................................20

17 U.S.C. § 114...................................................................................passim

Cal. Civ. Code § 983.......................................................................18, 19, 20

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

**Page(s)**

Cal. Code Civ. Proc. § 425.16 ...................................................................... 7, 8, 9

California Civil Code Section 980 ...................................................................... passim

California Code of Civil Procedure section 425.16 ................................................ 3

Fed. R. Civ. P. 12 ................................................................................................... 7

Fed. R. Civ. P. 56 ................................................................................................... 7

**Other Authorities**

2015 WL 5313053 (9th Cir. Sep. 9, 2015) ........................................................... 1

2015 WL 5313054 (9th Cir. Sep. 9, 2015) ........................................................... 1

2015 WL 5313055 (9th Cir. Sep. 9, 2015) ........................................................... 1

2015 WL 5313056 (9th Cir. Sep. 9, 2015) ........................................................... 1

2015 WL 5331515 (9th Cir. Sep. 9, 2015) ........................................................... 1

Assemb. Comm. on Judiciary,
   (Cal. Comm. Print 1982) .............................................................................. 20

*Copyright Law Revision: Hearing Before the Subcomm. of Patents,
   Trademarks & Copyrights of the Sen. Comm. on the Judiciary*,
   90th Cong., 494, 496, 501-02 (1967) .......................................................... 16

Douglas G. Baird, *Common Law Intellectual Property and the Legacy
   of International News Service v. Associated Press*, 50 U. Chi. L.
   Rev. 411, 419 n.35 (1983) ............................................................................ 16

H. Comm. On the Judiciary, 89th Cong., Supp. Register's Rep. On the
   General Revision of U.S. Copyright Law 38 (Comm. Print 1965) .............. 20

H. Subcomm. on Courts, Civ. Liberties,
   and the Admin. of Justice of the H. Comm. on the Judiciary, 95th
   Cong., *Performance Rights In Sound Recordings* ("1978
   Report") 30- 34 (Comm. Print 1978) ............................................................ 4

H.R. REP. No 60-2222 (1909) ............................................................................... 4

*Hearings Before the H. Comm. on Patents*, 59th Cong. (Comm. Print
   May 3, 1906) ................................................................................................... 4

Jason S. Berman Before the H. Judiciary Subcomm. on Courts &
   Intellectual Property: Hearing on HR. 1506 (June 21, 1995),
   1995 WL 371088 ........................................................................................... 17

**Page(s)**

June M. Besek and Eva E. Subotnik, *Constitutional Obstacles? Reconsidering Copyright Protection for Pre-1972 Sound Recordings*, 37 Colum. J. Law & Arts 327, 338 (2014) ...............16

Kevin Parks, MUSIC AND COPYRIGHT IN AMERICA: TOWARD THE CELESTIAL JUKEBOX, 121 (ABA 2012) .........................5

Lauren Kilgore, *Guerilla Radio: Has the Time Come for a Full Performance Right in Sound Recordings?*, 12 VAND.J.ENT. & TECH.L. 549, 559-60, 572 (2010)...................................................16

Leg. Assemb. B. 3483, 1981-82 Reg. Sess. (Cal. 1982)...........................................19

Robert L. Bard & Lewis S. Kurlantzick, *A Public Performance Right in Recordings: How to Alter the Copyright System Without Improving It*, 43 Geo. Wash. L. Rev. 152, 155 (1974) .........................5

Sidney Diamond, *Sound Recordings and Phonorecords: History and Current Law*. 1979 U. Ill. L.F. 337, 346-347, 358 (1979)........................17

Sound Recording Act of 1971, Pub. L. No 92-140, 85 Stat. 391 (1971) .........................................5

Steve Gordon & Anjana Puri, *The Current State of Pre-1972 Sound Recordings*, 4 NYU J. Intell. Prop. & Ent. L. 1 (2015) ...............................1

Tyler Ochoa, *A Seismic Ruling on Pre-1972 Sound Recordings and State Copyright Law,* Tech. & Mktg. L. Blog (Oct. 1, 2014) .......................1

U.S. Copyright Act section 106...............................................................22

U.S. COPYRIGHT OFFICE, COPYRIGHT BASICS 3 (2012) ...........................10

U.S. COPYRIGHT OFFICE, FEDERAL COPYRIGHT PROTECTION FOR PRE-1972 SOUND RECORDINGS: A REPORT OF THE REGISTER OF COPYRIGHTS 6 (2011) ...............................................................4

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

## **INTRODUCTION**

This is a copycat lawsuit that seeks to exploit two controversial decisions holding that California law is violated when anyone plays a sound recording created before February 15, 1972, whether on radio, in a restaurant, at home, or otherwise without a license.  In the first, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2014 WL 4725382 (C.D. Cal. Sept. 22, 2014), Judge Gutierrez ruled that California Civil Code Section 980 ("Section 980") conferred a public performance right on pre-1972 sound recordings.  And in *Capitol Records, LLC v. Sirius XM Radio Inc.*, 2014 WL 7387972 (Cal. Super. Ct. Oct. 14, 2014), Judge Strobel tentatively ruled that there was no such right, then reversed herself in light of Judge Gutierrez's decision, but thereafter acknowledged that immediate appellate review was appropriate.

Based on these widely criticized decisions,[1] plaintiff ABS Entertainment, Inc. ("ABS") alleges that defendants CBS Corporation and CBS Radio Inc. (collectively "CBS") violated California law each time they aired a pre-1972 sound recording. These claims target CBS's broadcast of expressive works—core First Amendment

---

[1] *E.g.*, Steve Gordon & Anjana Puri, *The Current State of Pre-1972 Sound Recordings*, 4 NYU J. Intell. Prop. & Ent. L. 1, at 5-6 (2015) (questioning "whether Judge Gutierrez's decision will be upheld" because it ignored clear legislative intent); Noah Drake, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.: Public Performance Rights for Pre-1972 Sound Recordings*, 6 Calif. L. Rev. Cir., Aug. 2015 at 61, 66-67 (criticizing failure to consider legislative history); Tyler Ochoa, *A Seismic Ruling on Pre-1972 Sound Recordings and State Copyright Law,* Tech. & Mktg. L. Blog (Oct. 1, 2014), *avail. at* http://blog.ericgoldman.org/ ("Interpreting a state statute first enacted in 1872 to provide such rights now, some 75 years later, will wreak havoc with existing commercial practices" and "undo a 75-year-old consensus that state law does not provide a public performance right").

Numerous *amici* in the Ninth Circuit *Pandora* appeal document the criticism.  *See Flo & Eddie v. Pandora*, No. 15-55287, 2015 WL 5313052 (9th Cir. Sep. 9, 2015) (Computer & Communications Industry Association); *id.*, 2015 WL 5331515 (9th Cir. Sep. 9, 2015) (National Association of Broadcasters); *id.*, 2015 WL 5313056 (9th Cir. Sep. 9, 2015) (Association for Recorded Sound Collections); *id.*, 2015 WL 5313054 (9th Cir. Sep. 9, 2015) (Yale Law School Information Society Project and Affiliated Scholars of Intellectual Property and Free Expression Law); *id.*, 2015 WL 5313053 (9th Cir. Sep. 9, 2015) (Copyright and Intellectual Property Law Professors); *id.*, 2015 WL 5313055 (9th Cir. Sep. 9, 2015) (SiriusXM).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

- 1 -

MPAS ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 CASE NO.
2:15-CV-6257-PA (AGRX)

1  activity—in which there is widespread public interest.  Accordingly, CBS files this
2  anti-SLAPP motion to vindicate its right to publicly perform these works.

3      Plaintiff's attempt to piggyback off of the recent cases is without merit.
4  During the longest applicable statute of limitations period (the last four years) CBS
5  did not play the pre-1972 recordings ABS claims to own.  Instead, CBS played only
6  *post*-1972 re-issued or re-mastered recordings, which are governed exclusively by
7  federal copyright law and thus beyond the reach of California law.  Under federal
8  law, CBS has the right to perform post-1972 recordings on terrestrial radio without
9  payment and to play them on digital platforms under a statutory compulsory license.

10      Even if CBS *had* played ABS's pre-1972 recordings, however, ABS's claims
11  still would be without merit.  Since the dawn of the music industry, sound
12  recordings have been broadcast on radio stations without restriction.  Until October
13  2014, no court had ever held that the owners of pre-1972 commercially released
14  recordings hold a common law or statutory right to control their performance.
15  Indeed, for the last century, commentators and the record companies have
16  acknowledged that no such right exists.  That is why, for decades, record companies
17  have lobbied—unsuccessfully, and against strenuous opposition from composers
18  and broadcasters—to require a license for the performance of such recordings.

19      If this Court were to follow the decisions on which this lawsuit is based, it
20  would have to disregard controlling California and Ninth Circuit law.  In California,
21  common law copyright has always been limited to preventing unauthorized *copying*.
22  And once a sound recording has been commercially released, as have ABS's, the
23  protection ends.  These two principles are fatal to ABS's claims.

24      The lynchpin of the recent decisions, and this case, is the 1982 amendment to
25  California Civil Code Section 980(a), by which the Legislature stated that the owner
26  of a sound recording has "an exclusive ownership therein."  Plaintiff reads the
27  amendment as having recognized a performance right.  But the statute makes no
28  mention of "performance"; it says only that the owner of a sound recording has "an

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

2

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1  exclusive ownership" in it.  Significantly, the Legislature noted that it was passing

2  only a housekeeping change to conform state law to the new preemption provisions

3  in U.S. copyright law, and that the statute would "maintain" *existing* law.  Critics

4  agree that the Legislature could not have created a new right *sub silentio*—let alone

5  without any debate over an issue that had created bitter controversy when aired in

6  Congress.  Such a dramatic change cannot be merely read into the statute.  The

7  creation of a performance right is a complex and controversial policy issue that

8  requires an express legislative act.  It can be neither implied nor judicially invented.

9         Because there is no public performance right, ABS's other claims also fail.

10  Plaintiff cannot repackage its defective Section 980 claim as ones for conversion,

11  misappropriation, or unfair competition because those claims depend on the

12  existence of the common law right.  Nor can ABS base its claim on any incidental

13  reproduction or distribution that occurs as part of CBS's lawful broadcasts.

14         Accordingly, because ABS cannot establish a probability of prevailing on its

15  claims, the Court should strike all of its claims under the anti-SLAPP protections

16  found in California Code of Civil Procedure section 425.16(b)(1).  *See Varian Med.*

17  *Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005) ("the point of the anti-SLAPP

18  statute is that you have a right not to be dragged through the courts").

19                              **<u>BACKGROUND FACTS</u>**

20  **I.      Congress and the Courts Have Consistently Refused to Create or**

21          **Recognize a Performance Right for Pre-1972 Sound Recordings.**

22         The music typically heard on a radio broadcast consists of two separate pieces

23  of intellectual property: (1) the musical work (or composition), which consists of the

24  notes (and any lyrics) written by the composer, and (2) the sound recording created

25  by singers and musicians in conjunction with producers and engineers.  There can be

26  many recordings of the same composition.  Since its infancy, federal copyright law

27  has protected only compositions.  Those rights are not at issue in this lawsuit.  Each

28  time CBS has played a recording, including those ABS claims to own, CBS has paid

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

3

MPAs ISO Defendants' Special Motion To Strike Under
C.C.P. § 425.16 Case No. 2:15-cv-6257-PA (AGRx)

a royalty to the owner of the composition, usually collected by a performing rights organization, such as ASCAP, BMI, or SESAC.  *See* Declarations of Jeff Sottolano, ¶ 14 and Seth Neiman, ¶ 27.

Until 1972, there was no federal copyright protection for sound recordings. Before February 15, 1972, sound recordings were protected, if at all, under a "patchwork of state protection."  U.S. COPYRIGHT OFFICE, FEDERAL COPYRIGHT PROTECTION FOR PRE-1972 SOUND RECORDINGS: A REPORT OF THE REGISTER OF COPYRIGHTS ("U.S. Copyright Office Report") 6 (2011), Strabone Decl. ¶ 2, Ex. 1.

As early as 1906, record companies began petitioning Congress for protection of sound recordings.  *See Hearings Before the H. Comm. on Patents*, 59th Cong., at 29 (Comm. Print May 3, 1906) (statement of Horace Pettit), Strabone Decl. ¶ 3, Ex. 2.  Congress refused, and the 1909 Copyright Act expressly denied protection to sound recordings.  H.R. REP. No 60-2222 at 9 (1909), Strabone Decl. ¶ 4, Ex. 3.

Starting in the 1920s, radio spread across the country and radio stations began playing records.  The record companies again asked Congress for federal protection for their sound recordings.  From 1925 to 1939, four bills were proposed.  Each failed.  *See* H. Subcomm. on Courts, Civ. Liberties, and the Admin. of Justice of the H. Comm. on the Judiciary, 95th Cong., *Performance Rights In Sound Recordings* ("1978 Report") 30- 34 (Comm. Print 1978), Strabone Decl. ¶ 5, Ex. 4.

Unable to obtain any federal rights in their sound recordings, record companies attempted to secure a performance right through the courts.  Those efforts were stymied in 1940 when Judge Learned Hand decided the seminal case *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86 (2d Cir. 1940).  *Whiteman* held that, at common law, no public performance right existed for sound recordings, and that publication of a recording divested any rights that did exist.  *Id*. at 88-90.  After the Supreme Court declined to hear the appeal, *Whiteman* effectively confirmed the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

4

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

common law nationally.  *See* Kevin Parks, MUSIC AND COPYRIGHT IN AMERICA: TOWARD THE CELESTIAL JUKEBOX 121 (ABA 2012), Strabone Decl. ¶ 6, Ex. 5.[2]

In the 1940s and early 1950s, the music industry changed, and so did the record companies' lobbying goals.  They were then relying on radio broadcasts to promote sales of their product, at times *paying* radio stations to play their recordings.  *See* Robert L. Bard & Lewis S. Kurlantzick, *A Public Performance Right in Recordings: How to Alter the Copyright System Without Improving It*, 43 Geo. Wash. L. Rev. 152, 155 (1974), Strabone Decl. ¶ 7, Ex. 6.  No longer concerned with *receiving* money for the public performance of their recordings, the record companies split from performing artists and *opposed* efforts to secure performance rights in sound recordings.  1978 Report at 35-36.

Beginning in the late 1950s, however, record companies became concerned with piracy of their product.  Bootleggers were using cheap means of duplicating records to divert sales from legitimate sources.  In 1971, to limit such piracy, Congress for the first time recognized copyright protection for sound recordings. But it limited that protection to sound recordings fixed on or after February 15, 1972, and granted a right to protect against only unauthorized *copying*.  *See* Sound Recording Act of 1971, Pub. L. No 92-140, 85 Stat. 391 (1971), Strabone Decl. ¶ 8, Ex. 7.  Aware of the long-running controversy over whether to grant a performance right in sound recordings, Congress stated that it was not granting such a right.  *Id.*

By the mid-1990s, the advent of digital media raised new concerns for record companies and performing artists.  Congress finally recognized a limited public performance right to copyright owners of sound recordings.  17 U.S.C. § 114(d)(1). As before, this right pertains solely to sound recordings created on or after February

---

[2] Although the Second Circuit later overruled *Whiteman* in part, *Capitol Records v. Mercury Records Corp.*, 221 F.2d 657, 663 (2d Cir. 1955), it did not disturb the holding that there is no common law public performance right in a sound recording. This is discussed in greater detail below.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

5

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

15, 1972, and the amendment covers only their digital transmission.  Further, record companies must grant compulsory licenses to any broadcaster for such uses under a highly regulated scheme.  17 U.S.C. § 114(d)(2).

## II.   ABS Entertainment, Inc. Acquires a Library of Pre-1972 Recordings.

Plaintiff ABS is an Arkansas company that allegedly owns the sound recordings of Al Green, Ann Peebles, and others.  Compl. ¶¶ 5, 8, Sch. A.  ABS claims to own the sound recording copyrights to the Al Green songs "Let's Stay Together," "I Can't Get Next to You," "Tired of Being Alone," and "I Want to Hold Your Hand," the Otis Clay song "That's How It Is," the Willie Mitchell Song "Soul Serenade," and the Ace Cannon song "Tuff."  Compl. Sch. A.

Those songs have been re-issued, re-mastered, and re-released numerous times.  Sottolano Decl. ¶¶ 8-12, Exs. 1-5, Neiman Decl. ¶¶ 12-26, Exs. 2-17.  Public searches indicate that there are many recordings of these songs.  Strabone Decl. ¶¶ 9-15, Exs. 8-14.  For example, non-party Hi Records claims a 2000 sound recording copyright in "Tired of Being Alone" on the album *The Best of Al Green*.[3]  Sottolano Decl. ¶ 8, Ex. 1.  Hi Records claims a 2003 sound recording copyright in "I Want to Hold Your Hand" on the album *Soul Tribute to the Beatles*.  Neiman Decl.  ¶ 24, Ex. 15.  Hi Records re-mastered at least four of Al Green's albums for re-release in 2003, and licensed Fat Possum Records to re-issue their entire catalog in 2009.[4]

## III.   CBS Did Not Perform Plaintiff's Pre-1972 Sound Recordings.

CBS delivers music content through broadcast radio channels, the Internet, and mobile applications.  Compl. ¶ 2.  ABS alleges that CBS's broadcast of sound recordings via its radio stations and Internet streaming services without permission

---

[3] *The Best of Al Green* was released on the Hip-O Records label, and was registered for copyright by Universal Music Enterprises.  Both are currently owned by Universal Music Group ("UMG").  *See* Sottolano Decl. ¶ 8, Ex. 1.

[4] http://www.billboard.com/articles/news/73064/al-greens-greatest-shined-up-for-reissue; http://www.billboard.com/articles/news/269426/fat-possum-licenses-hi-records-catalog.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088                                6                                MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
                                                                        C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1    and payment violates ABS's public performance right.  Compl. ¶ 4.  ABS also

2    alleges that the copies CBS makes to broadcast and stream songs violate its

3    reproduction, distribution, and other exploitation rights.  Compl. ¶ 33.

4          Contrary to those allegations, CBS's records for the last four years show that

5    CBS did not publicly perform any of ABS's pre-1972 recordings.  CBS does not

6    play vinyl sound recordings.  Sottolano Decl. ¶ 5; Neiman Decl. ¶ 6.  In fact, every

7    song CBS has played in the last four years has been a post-1972 digital sound

8    recording that has been re-issued or re-mastered.  Sottolano Decl. ¶ 5; Neiman Decl.

9    ¶ 7.  For example, "Tired of Being Alone" is found on UMG's 2006 *The Best of Al*

10   *Green* compilation.  Sottolano Decl. ¶ 8, Ex. 1.  That CD contains the re-mastered

11   version of the song created and registered for copyright in 2000.  *Id*.  The "Let's

12   Stay Together" recording CBS played is the 2003 re-mastered sound recording as

13   re-issued in 2009 by Fat Possum Records.  Strabone Decl. ¶ 21, Ex. 20.  Every other

14   song CBS played from plaintiff's "Schedule A" also came from a CD released many

15   *years after* 1972.  Compl. Sch. A; Sottolano Decl. ¶ 5; Neiman Decl. ¶ 11.

16                       **THE ANTI-SLAPP STATUTE**

17         Pursuant to California's anti-SLAPP statute and federal case law, CBS may

18   bring a special motion to strike ABS's claims in this federal diversity action. Cal.

19   Code Civ. Proc. ("CCP") § 425.16(b); *United States v. Lockheed Missiles & Space*

20   *Co.*, 190 F.3d 963, 973 (9th Cir. 1999).[5]  California's anti-SLAPP statute requires

21   the Court to strike claims that arise out of a defendant's protected speech where, as

22   here, the plaintiff cannot show a probability of prevailing on those claims.

23

24   [5] "[T]he manner in which [an anti-SLAPP motion is] presented and considered must
     comport with federal standards." *Rogers v. Home Shopping Network, Inc.*, 57 F.
25   Supp. 2d 973, 981 (C.D. Cal. 1999).  This motion comports with Fed. R. Civ. P.
     12(b)(6) and Fed. R. Civ. P. 12(b)(1) and should be considered as the equivalent of a
26   motion under those rules.  Alternatively, this motion can also be considered under
     Fed. R. Civ. P. 56 standards.  *Id.* at 983; *see Celotex Corp v. Catrett*, 477 U.S. 317,
27   325 (1986) ("the burden on the moving party may be discharged by showing—that
     is, pointing out to the district court—that there is an absence of evidence").
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
3945088                                         7                      MPAS ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
                                                                       C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRX)

1    An anti-SLAPP analysis proceeds in two steps.  To show that the statute

2    applies, CBS need demonstrate only that ABS's claims "aris[e] from any act of

3    [CBS] in furtherance of [CBS'] right of … free speech under the United States [or]

4    California Constitution in connection with a public issue."  CCP § 425.16(b).  Once

5    CBS establishes the statute applies, "[t]he burden then shifts to [ABS] … to establish

6    a reasonable probability that it will prevail on its claim."  *Makaeff v. Trump Univ.,*

7    *LLC*, 715 F.3d 254, 261 (9th Cir. 2013).  Unless ABS can establish a probability that

8    it can prevail on each of its claims, the Court must strike those claims in whole or in

9    relevant part.  *Cho v. Chang¸* 219 Cal. App. 4th 521, 526 (2013).

10    ### CBS IS ENTITLED TO PREVAIL ON THIS MOTION

11    ### I.    Plaintiff's Claims Arise From CBS's Protected Activity.

12    Dissemination of music to the public is "protected activity under the first

13    prong of the anti-SLAPP statute."  *Flo & Eddie v. Pandora*, No. 2:14-cv-07648,

14    Order on Anti-SLAPP at 3 (C.D. Cal. Feb. 23, 2015) ("*Pandora*") (quotation marks

15    omitted).[6]  The United States Supreme Court has already put to rest any debate that

16    "[e]ntertainment … is protected" activity.  *Schad v. Mount Ephraim*, 452 U.S. 61,

17    65 (1981).  Moreover, music is protected "expression and communication" and that

18    protection extends to those who disseminate musical works and sound recordings.

19    *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989); *see also Cinevision Corp.*

20    *v. City of Burbank*, 745 F.2d 560, 567-69 (9th Cir. 1984) ("[P]romoters of musical

21    expression of all types enjoy the protections of the first amendment.").

22    CBS's dissemination of the sound recordings at issue is "connect[ed] with a

23    public issue or an issue of public interest."  *Pandora*, at 6 (quotation marks omitted);

24

25    [6] ABS's allegations of copyright infringement are immaterial to the first step of the

26    anti-SLAPP analysis, as the "definitional focus" of the analysis is not the cause of
    action, but the "activity that gives rise to … asserted liability – and whether that

27    activity constitutes protected speech."  *Navellier v. Sletten*, 29 Cal. 4th 82, 92

28    (2002).  The activity in question is the dissemination of music to the public.  The
    impact of the alleged infringement can only be analyzed under the second prong.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088                                        8                    MPAS ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
                                                                    C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

CCP § 425.16(e).  "Like the [Anti-SLAPP statute] itself, the question whether something is an issue of public interest must be 'construed broadly.'"  *Hecimovich v. Encinal School Parent Teacher Org.*, 203 Cal. App. 4th 450, 464 (2012) (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007)).  Indeed, "'an issue of public interest' ... is *any issue in which the public is interested*" and "need not be 'significant' to be protected by the anti-SLAPP statute."  *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) (broadcast of television episode an issue of public interest (emphasis supplied)).  ABS has conceded that the sound recordings at issue here are culturally significant.  It alleges that the listed recordings "include[] the recordings of legendary artists" that "comprise the backbone of the music industry," and "have defined generations."  Compl. ¶ 5.  Without agreeing with these allegations, CBS's broadcasts constitute the type of dissemination of culturally significant information that California courts have recognized as affecting the public interest.  *See Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1347 (2007) (holding "television broadcast contributed to the public discussion of the issue" of Marlon Brando's personal life).  Accordingly, unless ABS can show a probability of prevailing, the Court must strike ABS's claims.

## II.     ABS Cannot Meet Its Burden To Show A Probability Of Prevailing On The Merits Of Its Claims.

### A.     CBS Did Not Perform ABS's Pre-1972 Works.

ABS's Complaint starts from the premise that CBS publicly performed ABS's pre-1972 sound recordings.  That is incorrect.  In the last four years, CBS played seven of the fifty-five songs listed in Schedule A to the Complaint.  Sottolano Decl. ¶ 3; Neiman Decl. ¶ 9.  As noted above, however, CBS did not play the pre-1972 recordings ABS claims to own.  CBS played only post-1972 re-issued and re-mastered digital recordings of those songs.  Sottolano Decl. ¶ 5; Neiman Decl. ¶ 11.

Re-issued sound recordings and re-mastered sound recordings are protected as new and separate works.  *See Maljack Prod. v. UAV*, 964 F. Supp. 1416, 1428 (C.D.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

9

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1    Cal. 1997) (holding that 17 U.S.C. § 114(b) "explicitly recognizes that a 'derivative

2    work in which the actual sounds fixed in the sound recording are rearranged,

3    remixed or otherwise altered in sequence or quality' is a protectable new work").  In

4    *Maljack*, a soundtrack was eligible for copyright protection as a new work because it

5    had been re-mastered.  *Id.*  Here, similarly, Hi Records, Inc. obtained a separate

6    copyright as of 2000 for its re-master of Al Green's "Tired of Being Alone."[7]

7         It matters *which* recording CBS played.  The copyright in a sound recording

8    attaches to the specific "aural version of such work as fixed on [a] material object."

9    1 Melville B. Miller and David Nimmer, *Nimmer on Copyright* § 2.10[A][2].  The

10   exclusive right in a sound recording is limited to the right to "duplicate the sound

11   recording in the form of phonorecords or copies that directly or indirectly recapture

12   the actual sounds fixed in the recording."  17 U.S.C. § 114(b).  Owners of

13   copyrighted sound recordings are therefore "largely limited to proceeding against

14   the tape or record 'pirate' who without permission makes a reproduction of the

15   actual sounds in a protected recording."  *Griffin v. J-Records*, 398 F. Supp. 2d 1137,

16   1142 (E.D. Wash. 2005).  CBS only broadcast songs from post-1972, federally

17   copyrighted albums.  Thus, when CBS broadcast "Tired of Being Alone," the

18   "actual sounds" CBS performed came from UMG's 2006 compilation album and the

19   2000 re-mastered sound recording.

20        During at least the four years before ABS sued, CBS did not play the pre-

21   1972 sound recordings ABS claims to own.  Thus, ABS cannot prevail on its claims.

22   Federal copyright law exclusively governs the post-1972 re-issued and re-mastered

23   sound recordings CBS played, and provides only a limited public performance right

24   for digital sound recordings that is subject to a compulsory license.  17 U.S.C. §

25

26   _____

27   [7] The creator of a re-issued or re-mastered work does not need to claim or register a
     copyright for it to be protected by federal copyright as a new and separate work.

28   U.S. COPYRIGHT OFFICE, COPYRIGHT BASICS 3 (2012), Strabone Decl. ¶ 16, Ex. 15.
     Copyright protection attaches to these new works automatically.  *Id.*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

10

MPAs ISO Defendants' Special Motion To Strike Under
C.C.P. § 425.16 Case No. 2:15-cv-6257-PA (AGRx)

1  114(d). Not surprisingly, ABS has not asserted that CBS violated those rights. It is

2  not clear that ABS even has any rights to the post-1972 recordings and it has not

3  pleaded any.**8** To the extent ABS has such rights, federal law puts CBS's terrestrial

4  radio broadcasts beyond their reach and authorizes CBS's Internet streams under a

5  statutory license.

6       The fact that the re-issued and re-mastered sound recordings CBS played

7  incorporate the pre-1972 recordings ABS claims to own is immaterial. *Pryor v.*

8  *Jean*, 2014 WL 5023088 (C.D. Cal., Oct. 8, 2014), addressed a similar situation.

9  The case concerned a 1974 recording by David Pryor. *Id.* at *1. He later authorized

10  a record company to re-master and re-issue the song, which it did in 1975. *Id.*

11  Years later, the record company granted a license to Jean (and others) to copy the re-

12  mastered recording for use in in movies and television programs. Pryor's heirs

13  sued, claiming that the license from the record company was insufficient. *Id.* The

14  Court dismissed the claims because the defendants were not using the 1974

15  recording; instead, they were using the 1975 re-mastered recording. *Id.* at *10-11.

16  The Court did so despite plaintiffs' allegation that the re-mastered recording was "a

17  literal copy" of and necessarily contained the original (*id.* at *1 n.1):

18  
19       Plaintiffs have the exclusive right to duplicate, rearrange, or remix the
        "actual sounds" of the [original] record. Defendants did not do
        anything with those "actual sounds." Rather Defendants used licensed
20       "actual sounds" from the [re-issued] record.

21  *Id.* at *4. The court refused to permit the plaintiffs to leverage any interest they had

22  in the original recording to constrain defendants' use of the re-master. Like the

23  defendants in *Pryor*, CBS never played the "actual sounds" from ABS's pre-1972

24  sound recordings. CBS played sounds from digital files that were created long after

25  
26  
27  _____
    **8** This creates a standing problem going to this Court's jurisdiction that also requires
28  dismissal. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (to show
    standing, a plaintiff "must have suffered an 'injury in fact'").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088                           11                           MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
                                                              C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1    1972.  ABS cannot use any common law right they may have in a pre-1972 original

2    to constrain CBS's use of a post-1972 recording governed solely by federal law.

3         Even if ABS now contends that there is no copyright protection for the re-

4    issued or re-mastered recordings (despite numerous copyright registrations saying

5    otherwise), it still does not have any standing to claim injury.  When CBS publicly

6    performs recordings from the *Best of Al Green* album, it is entitled to rely on

7    UMG's rights to make and release that CD.  *See* Sottolano Decl. ¶ 8, Ex. 1; *Gilliam*

8    *v. ABC*, 538 F.2d 14, 20 (2d Cir. 1976) ("If the proprietor of the derivative work is

9    licensed by the proprietor of the copyright in the underlying work to vend or

10   distribute the derivative work to third parties, those [third] parties will, of course,

11   suffer no liability for their use of the underlying work consistent with the license to

12   the proprietor of the derivative work.").  ABS makes no claim that UMG's CD

13   compilation was unauthorized or that its rights were limited so as to preclude the

14   performance of the recordings from that CD.  ABS has never claimed that the UMG

15   CDs or any of the other CDs at issue were unauthorized or limited.

16        **B.     ABS's Section 980 Claims Fail Because California Has Never**

17              **Recognized a Public Performance Right for Sound Recordings.**

18        Even if CBS had "performed" plaintiff's pre-1972 recordings, it could not

19   show a probability of prevailing on its claims because ABS has no common law

20   right in those performances.  ABS's claim seeks to capitalize on two recent rulings.

21   In each, the court interpreted Section 980 to confer a performance right for sound

22   recordings.  *See Flo & Eddie, Inc.,* 2014 WL 4725382; *Capitol Records*, 2014 WL

23   7387972.[9]  For good reason, no court before had ever read the statute that way.  This

24   Court should not do so now.

25

26

27   _____

     [9] Judge Gutierrez followed this ruling in the follow-on action against Pandora.  *See*
28   *Flo & Eddie v. Pandora*, No. 2:14-cv-07648 Order on Anti-SLAPP (C.D. Cal. Feb.
     23, 2015).  That anti-SLAPP ruling is now before the Ninth Circuit.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088                          12                  MPAs ISO Defendants' Special Motion To Strike Under
                                                     C.C.P. § 425.16 Case No. 2:15-cv-6257-PA (AGRx)

As noted above, the *Flo & Eddie* decision has been widely criticized.  *See* Footnote 1.  In her own analysis of Section 980 in the *Capitol Records* case, Judge Strobel rejected the fundamental premise of the *Flo & Eddie* decision, that Section 980's grant of "exclusive ownership" is unambiguous.  2014 WL 7387972, at *3. Although Judge Strobel ultimately held that there was a performance right under the statute, she recognized that the issue is far from settled.  In fact, Judge Strobel initially held there was no public performance right under Section 980.  *See* Strabone Decl. ¶ 17, Ex. 16 (August 27, 2014 Tentative Ruling).  Judge Strobel reversed course after *Flo & Eddie*, but still held there were "reasonable arguments on both sides" and certified the question for interlocutory appeal.  *Id.* at *4.  The Court of Appeal declined to accept interlocutory review and the case later settled.

Neither *Flo & Eddie* nor *Capitol Records* binds this Court.  *See Dowd v. City of L.A.*, 28 F. Supp. 3d 1019, 1066 (C.D. Cal. 2014) ("A decision of a federal district judge is not binding precedent…."); *see also Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) (noting that a state court decision is not binding on a federal court sitting in diversity).  Given the unsettled nature of the issues, as well as the factual differences between the defendants (*e.g.,* terrestrial vs. Internet broadcasters), this Court should independently review the matter.

ABS's claims rely on Section 980(a)(2), which states:

> The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein […] as against all persons except one who independently makes [a "cover"] recording.

The Legislature added this language in 1982.  For more than a century before that, the statute made no mention of a "sound recording," nor has it ever mentioned a performance right in sound recordings.  For ABS to prevail, either Section 980 *always* included a public performance right for sound recordings, which no one ever knew about or sought to enforce, or the Legislature *created* such a right, without telling anyone, when it amended the statute in 1982, which right then took over

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

13

MPAs ISO Defendants' Special Motion To Strike Under
C.C.P. § 425.16 Case No. 2:15-cv-6257-PA (AGRx)

1    thirty years to be noticed.  Neither premise is supported by the legislative history nor

2    the ensuing thirty years' case law, nor by the actions of any of the affected parties.

3                    **i.    California Has Never Recognized Any Public Performance**

4                           **Right for Commercially Released Sound Recordings.**

5            When it was originally enacted in 1872, Section 980 recognized an "exclusive

6    ownership" in "unpublished" works of authorship:

> The author of any product of the mind, whether it is an invention, or a
> composition in letters or art, or a design, with or without delineation, or
> other graphical representation, has an exclusive ownership therein, and
> in the representation or expression thereof, which continues so long as
> the product and the representations or expressions thereof made by him
> remain in his possession.

11   Section 980 and its use of the phrase "exclusive ownership" codified the basic

12   principles governing "common law" copyrights to such unpublished works.

13   *Zachary v. W. Publ'g Co.*, 75 Cal. App. 3d 911, 918 (1977).

14           Courts thus looked to the common law to determine the scope of such

15   "exclusive ownership."  As to whether the common law recognizes a performance

16   right in commercially released sound recordings, few cases—in California or

17   elsewhere—have squarely addressed the question.  Of those that have, the seminal

18   case is *Whiteman*.  In *Whiteman*, RCA Manufacturing Company, Inc. sued to stop

19   Whiteman and the W.B.O. Broadcasting Corporation from broadcasting phonograph

20   records of musical performances by Whiteman's orchestra that the record company

21   owned.  114 F.2d at 88-90.  Judge Learned Hand surveyed common law nationally

22   and rejected plaintiff's claim for two reasons: (1) no public performance right

23   existed for sound recordings at common law; and (2) the commercial release of a

24   sound recording divested the copyright owner of all common law rights.  *Id.*  Years

25   later, the Second Circuit overruled the second holding, on divestiture, as a matter of

26   New York law, in *Capitol Records*, 221 F.2d 657, but did not disturb the first

27   holding that there is no performance right.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

14

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

California courts have followed **both** holdings of *Whiteman*.  *See, e.g.*, *Blanc v. Lantz*, No. 547157, 1949 WL 4766, at *8 (Cal. Super. Ct. Sept. 30, 1949) (citing *Whiteman* to hold that "following the sale of such records, a radio station did not infringe any common law copyright by broadcasting them").  They continued to do so even after New York reversed course on the divestiture issue.  *See McIntyre v. Double-A Music Corp.*, 179 F. Supp. 160, 161 (S.D. Cal. 1959) (stating the court's "agreement with the position taken by Judge L. Hand in *RCA Mfg. Co. v. Whiteman*" on the loss of common law rights through publication of the work).  Thus, under either holding of *Whiteman*, ABS cannot state a claim.

### a.      There Is No Common Law Public Performance Right for Sound Recordings.

In *Whiteman*, Judge Learned Hand articulated the generally accepted understanding that common law copyrights are limited and that there is no public performance right under common law:

> Copyright in any form, whether statutory or at common-law, is a monopoly; it consists *only* in the power to prevent others from *reproducing* the copyrighted work.

*Whiteman*, 114 F.2d at 88 (emphasis added).  This holding also correctly stated the law in California.  Courts in this state have long held that that common law copyright protection extends only to **copying**.  *See Golding v. R.K.O. Pictures*, 35 Cal. 2d 690, 694 (1950) (Section 980 claim—"so-called common-law copyright"—requires "unauthorized copying"); *Teich v. Gen. Mills, Inc.*, 170 Cal. App. 2d 791, 804 (1959) (there "can be no infringement unless there has been a copying").

Until recently, no California court had held that state law conferred a right to control the **performance** of sound recordings.  Even the two recent decisions acknowledge the absence of any cases so holding.  *See Flo & Eddie*, 2014 WL 4725382, at *8; *Capitol Records, LLC v. Sirius XM Radio, Inc.*, No. BC520981, 2014 WL 7150014, *4 (Cal. Super. Ct. Dec. 5, 2014).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

15

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

*Whiteman's* holding has long been understood to state the common law.  Even after the partial reversal in *Mercury Records*, commentators have continued to agree with *Whiteman's* statement of the limited scope of common law copyright.[10]  The U.S. Copyright Office has acknowledged this consensus, citing *Whiteman* for the rule that "state law does not appear to recognize a performance right in sound recordings."  U.S. Copyright Office Report at 44-45.

The recording companies' trade association, the Recording Industry Association of America ("RIAA"), whose members purport to "create, manufacture and/or distribute approximately 85% of all legitimate sound recordings produced and sold in the United States," represents the most significant stakeholders in pre-1972 sound recordings.  Comments of Recording Industry of America (RIAA) and American Association of Independent Music (A2IM), Docket No. 2010-4, at 1 n.1, Strabone Decl., ¶ 18, Ex. 17.  For decades, it likewise has conceded the lack of any performance right under state law for sound recordings.  In 1967, the president of Capitol Records testified before Congress in support of adding a performance right to control and receive compensation for airing sound recordings on the radio, acknowledging that there was no such right:

> The record manufacturer makes his profit, if any, solely from the sale of records.... The record company receives nothing from the widespread performance-for-profit of its products, whether on radio or television, in clubs, or restaurants.... There is no clearly established legal remedy available to stop this unauthorized use of our product.

*See Copyright Law Revision: Hearing on S. 597 Before the Subcomm. of Patents,*

---

[10] June M. Besek and Eva E. Subotnik, *Constitutional Obstacles? Reconsidering Copyright Protection for Pre-1972 Sound Recordings*, 37 Colum. J. Law & Arts 327, 338 (2014) (states do not appear to recognize right of public performance for pre-1972 sound recordings); Douglas G. Baird, *Common Law Intellectual Property and the Legacy of International News Service v. Associated Press*, 50 U. Chi. L. Rev. 411, 419 n.35 (1983) ("Copyright law did not (and in fact still does not) give a performer the right to control radio broadcasts of his performances."); Lauren Kilgore, *Guerilla Radio: Has the Time Come for a Full Performance Right in Sound Recordings?*, 12 VAND.J.ENT. & TECH.L. 549, 559-60, 572 (2010) (*Capitol Records* overruled *Whiteman* on a different issue).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

16

MPAs ISO Defendants' Special Motion To Strike Under
C.C.P. § 425.16 Case No. 2:15-cv-6257-PA (AGRx)

1  *Trademarks & Copyrights of the S. Comm. on the Judiciary*, 90th Cong., 494, 496,

2  501-02 (1967) (statement of Alan Livingston, President of Capitol Records).  In

3  1979, Sidney Diamond, former RIAA counsel, echoed this interpretation of the law

4  in his article *Sound Recordings and Phonorecords: History and Current Law*.  1979

5  U. Ill. L.F. 337, 346-347, 358 (1979) (describing sound recordings as "the only class

6  of performable works whose copyrights are not infringed by unauthorized

7  performance").  In 1995 Congressional testimony, the RIAA explained that:

8      Under existing law, record companies and performers … have no rights
       to authorize or be compensated for the broadcast or other public
9      performance of their works.

10  Testimony of Jason S. Berman Before the H. Judiciary Subcomm. on Courts &

11  Intellectual Property: Hearing on HR. 1506 (June 21, 1995), 1995 WL 371088.  In

12  short, all interested parties have for decades agreed that there is no common law

13  performance right for pre-1972 recordings.  If ABS is correct, these hearings—and

14  the lobbying that precipitated them—were pointless.  Even worse, the testimony by

15  the record companies and their representatives about the law was wrong.

16      Plaintiffs in other pending pre-1972 cases have looked in vain to *Capital*

17  *Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198 (C.D. Cal. 2010), and

18  *Bagdasarian Prods., LLC v. Capitol Records, Inc.*, No. BC384048, 2010 WL

19  3245795 (Cal. Ct. App. Aug. 18, 2010) for recognition of a public performance

20  right.  The court in *BlueBeat* did no more than summarily adopt the plaintiff's

21  argument that "reproduction, distribution, and public performance" of pirated copies

22  of songs (by making them available for download and streaming) constituted

23  misappropriation, unfair competition, and conversion.  765 F. Supp. 2d at 1203.

24  The plaintiff did not plead, and the district court did not find, that the defendant's

25  alleged performance of pre-1972 recordings infringed any common law copyright.

26      As for *Bagdasarian*, the court never even addressed the issue.  It interpreted

27  a contract, noting in *dicta* that it did not appear to grant rights to "publicly perform[]

28  [] records."  2010 WL 3245795, at *11.  That observation says nothing about the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

17

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1   common law.  *Bagdasarian*, moreover, is unpublished, and in *Capitol Records*,

2   Judge Strobel properly found it to be without "any precedential value."  2014 WL

3   7387972, at *4.  Even in *Flo & Eddie*, Judge Gutierrez acknowledged that any

4   reference to a performance right was *dicta*.  2014 WL 4725382, at *8.  Judge Strobel

5   further found that, although *BlueBeat* and *Bagdasarian* "support the proposition that

6   common law rights in pre-1972 sound recordings included protections against

7   unauthorized duplication and distribution of recordings," neither addresses "rights in

8   public performance of the sound recordings."  2014 WL 7387972, at *4.

9           **b.**        **Offering a Sound Recording for Sale is a General**

10                     **Publication that Divests All Common Law Rights.**

11      Even if ABS had a common law public performance right for sound

12  recordings, that right ended upon ABS's commercial release of those recordings.  In

13  *Whiteman*, Judge Learned Hand explained that "the 'common-law property' in these

14  performances ended with the sale of the records" and that "anyone may copy [them]

15  who chances to hear [them], and may use [them] as he pleases."  114 F.2d at 88-89.

16      This also correctly stated the law in California.  As originally enacted, Section

17  980 made clear that any ownership interest only "continues so long as the product

18  and the representations or expressions thereof made by him remain in his

19  possession."  Cal. Civ. Code § 980(a) (1872).  Section 983, enacted alongside

20  Section 980 in 1872, confirmed that "[i]f the owner of any invention or design

21  intentionally makes it public, a copy or reproduction may be made public by any

22  person, without responsibility to the owner, so far as the law of this state is

23  concerned."  Cal. Civ. Code § 983.

24      While this aspect of *Whiteman* has since been overruled as a matter of New

25  York law (*Mercury Records*, 221 F.2d at 663), it remains the law in California.  *See,*

26  *e.g.*, *McIntyre*, 166 F. Supp. at 683 ("General publication of this musical

27  arrangement through its unrestricted sale placed it in the public domain.").  In *Lone*

28  *Ranger Television, Inc. v. Program Radio Corp.*, the Ninth Circuit confirmed that

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

18

MPAs ISO Defendants' Special Motion To Strike Under
C.C.P. § 425.16 Case No. 2:15-cv-6257-PA (AGRx)

"commercial distribution of [sound] recordings lacks th[e] quality of 'restricted or limited' publication" and thus divests the owner of common law copyright protection. 740 F.2d 718, 726 (9th Cir. 1984). In *Pandora*, a companion case substantively identical to *Flo & Eddie*, Judge Gutierrez conceded that *Lone Ranger* held that record sales and radio play effected a general "publication" of sound recordings ending any common law property rights under Section 980. Case No. 2:14-cv-07648, Order on Anti-SLAPP at 12. Thus, unless the 1982 amendment to Section 980 "re-vested" a performance right that had already been lost by the time the Legislature revised that statute, ABS's claims must fail. As explained next, the Legislature took no such drastic step when it amended Section 980 in 1982.

### ii.   The California Legislature Did Not Create Any New Public Performance Right for Sound Recordings in 1982.

In 1982, the California legislature amended Section 980 to grant:

> [t]he author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein […] as against all persons except one who independently makes [a "cover"] recording.

Cal. Civ. Code § 980(a)(2). The Legislature made clear that the intent of the amendment was to "***maintain*** rights and remedies in [pre-1972] sound recordings." *See* Legis. Assemb. B. 3483, 1981-82 Reg. Sess. (Cal. 1982) ("1982 Leg. Hist."), at 14 (emphasis added), Strabone Decl. ¶ 19, Ex. 18. The amendment does not refer to any "performance" right, nor is there any evidence the Legislature secretly and silently intended to create one. It did not.

When the Legislature amended Sections 980 and 983, the stated purpose was to remove language that conflicted with the 1976 overhaul of U.S. copyright law. *Id.* at 50. Before 1976, and as relevant here, federal copyright law left unpublished works to the protection of state law. Beginning on January 1, 1978, federal copyright protection arose at the moment of a work's creation (*i.e.*, when it was fixed in a tangible medium), whether or not it was or ever would be published.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

19

MPAS ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1    Even unpublished works fell within federal copyright law, which preempted all state

2    law.  *See* 17 U.S.C. § 301(a).  Only sound recordings created before February 15,

3    1972 and works not fixed in a tangible medium remained subject to state law.  It

4    was therefore necessary for the California Legislature to remove protection under

5    Sections 980 and 983 for all other unpublished works.  To do so, the Legislature

6    made what it described as no more than "technical and minor policy changes" to

7    Sections 980 and 983.  Leg. Assemb. B. 3483, *supra*, at 48 (Cal. 1982).  These

8    "minor changes" passed with "no known arguments against the proposal" (*id.*), in

9    marked contrast to the "explosively controversial" discussion of creating a

10   performance right in sound recordings when Congress debated that issue.  Staff of

11   H. Comm. on the Judiciary,  89th Cong. Rep. on the  General Revision of U.S.

12   Copyright Law 51 (Comm. Print 1965), Strabone Decl. Ex. 19.

13       Nevertheless, in *Flo & Eddie*, Judge Gutierrez *inferred* the creation of a

14   performance right.  He reached that conclusion on the basis of both "the plain

15   meaning of having 'exclusive ownership,'" and the rule of construction that when

16   exceptions are listed, they are exhaustive.  *Flo & Eddie*, 2014 WL 4725382, at *4,

17   *11.  Respectfully, both bases for Judge Gutierrez's conclusion are in error.

18       First, even *Capitol Records*, which adopted *Flo & Eddie's* conclusion that

19   Section 980 includes a performance right, "disagree[d] that the meaning of

20   'ownership' in the statute is unambiguous."  2014 WL 7387972, at *2.  As Judge

21   Strobel acknowledged in *Capitol Records*, Section 980 does not illuminate the rights

22   a common law copyright holder possesses after selling its copyrighted work to

23   another.  *Id.* at *2.  Judge Gutierrez's interpretation of Section 980—that the

24   copyright holder continues to enjoy every right not expressly excluded from the

25   statute—is not only overly simplistic but over-inclusive because it would extend to

26   preclude, for example, even ***private*** performances of lawfully purchased sound

27   recordings, such as listening to a CD in one's home.  The Legislature cannot have

28   intended to make every California citizen who listens to recorded music in their

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

3945088

20

MPAS ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1  home or car, or in a restaurant or bar, an outlaw.  Yet that is the indefensible

2  consequence of the decisions in these recent cases.

3      Fortunately, that is not the law nor a correct reading of the statute.  The term

4  "exclusive ownership" in Section 980 by itself says nothing about *what* rights such

5  ownership encompasses.  In *Flo & Eddie*, Judge Gutierrez mistakenly assumed that

6  "exclusive ownership" encompasses "all rights that can attach to intellectual

7  property, save the singular, expressly-stated exception for making 'covers' of a

8  recording."  *Id.* at *5.  But that, too, has never been the law in California.  The term

9  "exclusive ownership" was not a newly enacted concept in 1982.  Section 980

10  included that phrase from the very beginning.  *See* Cal. Civ. Code § 980(a) (1872).

11  It was understood simply to codify whatever rights exist under common law

12  copyright (*see Zachary*, 75 Cal. App. 3d at 918), which always has been limited to

13  unauthorized *copying* (*see Golding*, 35 Cal. 2d at 694).

14      Second, there is no basis to ***imply*** the creation of a public performance right in

15  1982.  Judge Gutierrez (and Judge Strobel) found it significant that, when it

16  amended Section 980, the Legislature included the "covers" exception found in the

17  federal copyright law.  *See Flo & Eddie Inc.*, 2014 WL 4725382, at *5; *Capitol*

18  *Records*, 2014 WL 7150014, at *3.  It authorizes "one who independently makes or

19  duplicates another sound recording that does not directly or indirectly recapture the

20  actual sounds fixed in such prior sound recording, but consists entirely of an

21  independent fixation of other sounds."  Cal. Civ. Code § 980(a)(2); *cf.* 17 U.S.C.

22  § 114(b).  Both judges assumed that, because the Legislature included the "covers"

23  exception but not the "public performance" exception, it must have intended to

24  include public performance rights within the "exclusive right."  That assumption is

25  unfounded and reads too much into the omission.  It is equally logical (and more

26  plausible given the legislative history) that the Legislature did not include a "public

27  performance" exception because California common law *never recognized one*.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

21

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

The reason the Legislature did not need to include a "public performance" exception is because the federal and California statutes are structured differently.  In section 106 of the U.S. Copyright Act, the statute specifically lists a bundle of rights for all works covered by copyright, including in section 106(4) a public performance right.  Given that enumeration, Congress specified in section 114(a) which of those rights would apply to sound recordings, and expressly excluded the section 106(4) public performance right.  The California statute, however, does not enumerate any specific rights.  It simply adopts the common law scope of rights.  There would be no reason to create a "public performance" exception under the California structure unless the common law already included such a right.

More fundamentally, it is error to imply the creation of a right from the absence of its exclusion, because doing so "would contradict a discernible and contrary legislative intent" merely to *maintain* existing rights.  *See In re J.W.*, 29 Cal. 4th 200, 209 (2002).  In amending Section 980, the Legislature did not declare what it believed the state of the common law to be, nor did it purport to create new rights.  *See* 1982 Leg. Hist. at 14.  In 1982, lawmakers knew that the scope of rights for sound recordings was an "explosively controversial" public policy issue that pitted many stakeholders against one other.  *See* Supp. Register's Rep. on the General Revision of U.S. Copyright Law 38 (Comm. Print 1965).  It defies credulity to assume that the Legislature secretly enacted an "explosively controversial" public performance right that had been defeated at the federal level—without saying so, without any comment from any stakeholder, and without any rights-holder realizing it, much less seeking to enforce it for the next thirty years.

Against this backdrop, the holdings in *Flo & Eddie* and *Capitol Records* that the amended Section 980 created a public performance right for sound recordings *by implication* were improper.  They contravene the "presumption that a statute does not, by implication, repeal the common law" unless "there is no rational basis for harmonizing two potentially conflicting laws."  *People v. Zikorus*, 150 Cal. App. 3d

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

22

MPAs ISO Defendants' Special Motion To Strike Under
C.C.P. § 425.16 Case No. 2:15-cv-6257-PA (AGRx)

324, 330 (1983).  California law is unmistakable that "[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules." *Cal. Ass'n. of Health Facilities v. Dep't of Health Servs.*, 16 Cal. 4th 284, 297 (1997) (citations omitted in original).

Indeed, when there has been more than a century of consensus that no such right exists, California law admonishes courts to harmonize ambiguous statutory language with such long-accepted constructions on which interested parties have relied.  *See People v. S. Pac. Co.*, 209 Cal. 578, 594-95 (1930) (contemporaneous interpretation long acquiesced in by all interested parties sufficient to justify interpretation of ambiguous language in favor of sustaining such long unquestioned interpretation).  This, too, compels the conclusion that Section 980 does not grant ABS any right to control public performance of sound recordings.

Of course, absent explicit legislative action, it would be equally impermissible for the Court to create a public performance right on its own. "[W]here significant policy judgments affecting commercial relationships are implicated," the determination is better suited for legislative decision making. *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 82 (1993).  There is no doubt that is the case here.  Judge Strobel and others have acknowledged that the "issue of whether a public performance right exists under Section 980(a)(2) could affect a large number of sound recording owners in California and various participants in the broadcasting industry." *Capitol Records*, 2014 WL 7150014, at *4; *cf. Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 62 F.Supp.3d 325, 338 (S.D.N.Y. 2014) ("Whether New York provides holders of common law copyrights in sound recordings with an exclusive right to publicly perform those recordings […] has profound economic consequences for the recording industry and both the analog and digital broadcast industries.").  "[O]nly the Legislature is qualified to make the significant policy judgments affecting commercial relationships required to justify expansion of [law]." *Harris*, 14 Cal. App. 4th at 82.  A court that seeks to expand the law in these

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

23

MPAs ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRX)

1 | circumstances "usurp[s] the Legislature's role in determining policy."  *FNB Mortg.*
2 | *Corp. v. Pac. Gen. Group*, 76 Cal. App. 4th 1116, 1134 (1999).

3 |    **iii.**  **ABS's Reproduction, Distribution, and Other Claims Fail**
4 |        **Because They Are Derivative of ABS's Performance Claims.**

5 |    ABS alleges that CBS has made copies of the contested recordings in order to
6 | "transmit, copy, perform, broadcast, and stream them to its millions of users …."
7 | *Id*. ¶ 6.  ABS claims that this copying violates its exclusive rights to reproduction,
8 | distribution, and other exploitation.  *Id.* ¶ 33.  Putting aside the factual inaccuracy of
9 | this statement, these claims have no merit.

10 |    Copying that is incidental to an otherwise lawful exercise of rights cannot be
11 | actionable under the "fair use" doctrine.  *See Perfect 10, Inc. v. Amazon.com, Inc.*,
12 | 508 F.3d 1146, 1167-1168 (9th Cir. 2007).  The fair use doctrine applies under
13 | California law and follows the same four-factor test codified in Section 107 of the
14 | federal Copyright Act, which considers: (1) the purpose and character of the use,
15 | including whether such use is of a commercial nature or is for nonprofit educational
16 | purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality
17 | of the portion used in relation to the copyrighted work as a whole; and (4) the effect
18 | of the use upon the potential market for or value of the copyrighted work.  *See*
19 | *Kramer v. Thomas*, 2006 WL 4729242, at *9-12 (C.D. Cal. Sept. 28, 2006).

20 |    Any incidental copying here is fair use.  CBS's broadcasts provide "social
21 | benefit" by transmitting sound recordings to the public "in a different context" so
22 | that they are "transformed into a new creation."  *Perfect 10*, 508 F.3d at 1165.  To
23 | the extent CBS fully copied the "previously published" sound recordings, it was
24 | "necessary for [CBS'] intended use" of broadcasting entire songs to the public.  *Id.*
25 | at 1167-1168; *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821 (9th Cir. 2003) (holding
26 | that the third factor will not weigh against a party who only copies "as much as is
27 | necessary for his or her intended use.").  Finally, ABS has not been harmed.  Any
28 | copies CBS created were not "substitutes for the market of the original work,"

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088

24

MPAS ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
C.C.P. § 425.16 CASE NO. 2:15-CV-6257-PA (AGRx)

1  because they were used solely for purposes of CBS's lawful broadcasts. *Castle*
2  *Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 145 (2d Cir. 1998).

3  **C.    ABS Cannot Prevail on its Remaining Common Law Claims.**

4       Because ABS cannot prevail on its claims under Section 980, its conversion
5  and misappropriation claims necessarily fail as well.  Conversion and
6  misappropriation require ownership of a property right. *Welco Electronics, Inc.* v.
7  *Mora,* 223 Cal. App. 4th 202, 208 (2014) (holding that conversion requires "the
8  plaintiff's ownership or right to possession of the property" converted); *Lebas*
9  *Fashion Imports of USA, Inc.* v. *ITT Hartford Ins. Grp.,* 50 Cal. App. 4th 548, 561
10  (1996) (holding that misappropriation requires the court to be able to characterize
11  the plaintiff as owning a "kind of property right.").

12       ABS's unfair competition claim fails because claims based on Business and
13  Professions Code § 17200 require "violation of [an]other law[]," such as conversion.
14  *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000).
15  Because CBS's lawful broadcasting has not violated any other laws, CBS cannot be
16  liable under Section 17200.

17                        **CONCLUSION**

18       For the foregoing reasons, CBS respectfully requests that the Court strike
19  ABS's Complaint in whole or in pertinent part.

20  Dated:  October 20, 2015          Respectfully submitted,

21                                    By: _____
22                                        Robert M. Schwartz

23                                    IRELL & MANELLA LLP
                                       *Attorneys for Defendants*
24
25
26
27
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3945088                        25                MPAS ISO DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER
                                                 C.C.P. § 425.16 CASE NO. 2:15-cv-6257-PA (AGRx)