McKOOL SMITH HENNIGAN, P.C.
RODERICK G. DORMAN (SBN 96908)
rdorman@mckoolsmithhennigan.com
ROBERT E. ALLEN (SBN 166589)
rallen@mckoolsmithhennigan.com
LAWRENCE M. HADLEY (SBN 157728)
lhadley@mckoolsmithhennigan.com
865 S. Figueroa Street, Suite 2900
Los Angeles, CA 90017
T:  (213) 694-1200; F:  (213) 694-1234

MILLER LAW LLC
MARVIN A. MILLER (admitted *pro hac vice*)
mmiller@millerlawllc.com
ANDREW SZOT (admitted *pro hac vice*)
aszot@millerlawllc.com
KATHLEEN BOYCHUCK (admitted *pro hac vice*)
kboychuck@millerlawllc.com
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
T:  (312) 332-3400; F:  (312) 676-2676

Attorneys for Plaintiff
ABS ENTERTAINMENT, INC.
[SEE ATTACHED PAGE FOR ADDITIONAL COUNSEL]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABS ENTERTAINMENT, INC., an Arkansas corporation, BARNABY RECORDS, INC., a California corporation, BRUNSWICK RECORD CORPORATION, a New York corporation and MALACO, INC., a Mississippi corporation, each individually and on behalf of all others similarly situated.<br><br>Plaintiffs,<br>v.<br><br>CBS CORPORATION, a Delaware corporation; CBS RADIO INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. 2:15-cv-06257-PA (AGRx)<br><br>**JOINT REPORT OF RULE 26 MEETING OF COUNSEL**<br><br>Date:   December 14, 2015<br>Time:   10:30 a.m.<br>Place:  Courtroom 15 – Spring St.<br>Before: Hon. Percy Anderson |

In accordance with this Court's Order for setting a FRCP 26(f) Scheduling Conference and directing the parties to meet and prepare a Joint Scheduling Report, Plaintiffs ABS ENTERTAINMENT, INC., BARNABY RECORDS, INC., BRUNSWICK RECORD CORPORATION, and MALACO, INC., and Defendants CBS CORPORATION, and CBS RADIO INC., met on November 3, 2015 and hereby submit the following Joint Rule 26(f) Report.

## I.     CASE SYNOPSIS AND PRINCIPAL ISSUES

This is a class action on behalf of Plaintiffs and owners of sound recordings. Plaintiff, ABS Entertainment, Inc., filed the original action in the case on August 17, 2015.  On October 29, 2015, Plaintiff ABS, together with other named plaintiffs, filed a First Amended Complaint ("FAC") in this action.

In the FAC, Plaintiffs allege that Defendants CBS Corporation and CBS Radio Inc. (collectively, "CBS") exploit music content through broadcast radio channels, HD radio channels, the Internet and mobile devices broadcasts, including sound recordings that were fixed (i.e., recorded) prior to February 15, 1972 ("Pre-1972 Recordings"). Plaintiffs further allege that CBS has not obtained licenses to reproduce, publicly perform or distribute the Pre-1972 Recordings, or paid royalties to the owners (including Plaintiffs) of the Pre-1972 Recordings.  While sound recordings initially fixed on or after February 15, 1972 are subject to federal copyright protection under the United States Copyright Act (and are not the subject of this lawsuit), Pre-1972 Recordings are not subject to the Copyright Act.  Rather, Plaintiffs' ownership rights in Pre-1972 Recordings are protected under California law.  Because CBS has not obtained licenses from Plaintiffs for its use of the Pre-1972 Recordings, Plaintiffs allege that CBS is liable under California law for violation of California Common Law and Unfair Competition for its unauthorized reproduction, distribution, and public performance of those recordings.

CBS denies that it is liable for its broadcast and digital streaming of the Pre-1972 Recordings. CBS asserts that Plaintiffs may not be the owners of the Pre-1972

Recordings. CBS further asserts that it did and does not broadcast or otherwise improperly use Plaintiffs' Pre-1972 Recordings. CBS asserts that it has broadcasted digital re-mastered and/or re-issued recordings that were created after February 15, 1972, and thus are subject to the federal Copyright Act, not California state law. CBS also asserts that it was authorized to broadcast those recordings based on the rights granted to the entities that released the re-mastered and re-issued recordings. Further, CBS denies that California law recognizes or protects a performance right in Pre-1972 Recordings. And even if California law did recognize or protect such a right, CBS asserts that its broadcast was licensed, authorized, or otherwise lawful.

On November 6, 2015, Plaintiffs filed a motion to appoint their current attorneys as interim class counsel. CBS filed a brief in opposition to that motion on November 16. On November 23, Plaintiffs filed a motion to certify a class of owners of Pre-1972 Recordings. On November 25, 2015, by Order (ECF No. 65) ("the Order") , the Court struck Plaintiffs' motion for class certification, denied Plaintiffs' motion to appoint interim class counsel as moot, and struck Plaintiffs' class allegations from the FAC.

The Court's entry of the Order materially affects the content of this Joint Report. While reserving all rights to appeal, Plaintiffs believe that the remaining matters for which a Joint Report is requested are likely moot because this Court likely no longer has subject matter jurisdiction of this case. The sole basis for subject matter jurisdiction alleged in the operative pleading is the Class Action Fairness Act of 2005, 28 U.S.C. Section 1322(d), and the Court has now stricken the class action allegations from the complaint in their entirety.

Plaintiffs propose that the Court, on a schedule convenient to the Court, set a briefing schedule and order the briefing on a motion for an order to show cause why, following entry of the Order, the case should not be dismissed for lack of subject matter jurisdiction. Plaintiffs further propose that this case be stayed and that no further discovery or activity proceed until the Court rules on the proposed order to

show cause. CBS believes that the entry of the Order does not affect the Court's subject matter jurisdiction and is prepared to address that question, as the Court directs. Because the issue goes to the Court's jurisdiction, however, CBS does not oppose Plaintiffs' request for a short stay to resolve it.

From the Plaintiffs' perspective, the issues and dates set forth in the remainder of this filing constitute proposed positions and scheduling in the hypothetical event this case were to proceed in federal court with the individual plaintiffs in a non-class action proceeding. CBS remains prepared to proceed on the issues and on the schedule described below.

Prior to the Order No. 65, the parties agreed that the principal issues in this case would be as follows:

1. Whether Plaintiffs own the Pre-1972 Recordings at issue.
2. Whether CBS has performed or digitally distributed Plaintiffs' Pre-1972 Recordings.
3. Whether California state law recognizes an exclusive right to publicly perform, reproduce, and/or distribute Pre-1972 sound recordings.
4. Whether CBS is licensed or otherwise has a right to broadcast, digitally distribute, or otherwise use Plaintiffs' Pre-1972 Recordings.
5. Whether Plaintiffs have waived, acquiesced, or are otherwise estopped from seeking any relief from the broadcast, distribution, or use of Plaintiffs' Pre-1972 Recordings.
6. Whether the proposed class meets the requirements of Fed. R. Civ. P. 23 for class certification.
7. The amount of damages, if any, that CBS owes for any violation of California law in connection with exploitation of Plaintiffs' Pre-1972 Recordings.
8. Whether Plaintiffs are entitled to injunctive relief.

## II.   RULE 26(f) AND JOINT REPORT TOPICS

### A.   Proposed Schedule

In response to the original complaint, Defendants filed Special Motion to Strike Pursuant to California Code of Civil Procedure § 425.16 ("Anti-SLAPP Motion"). Subsequently, Plaintiffs filed the FAC, which rendered the Anti-SLAPP Motion moot. Defendants plan on filing another Anti-SLAPP Motion directed at the FAC. The current deadline for the Anti-SLAPP Motion is December 28, 2015. The parties agree and request permission from the Court to extend the date for filing that motion until February 26, 2016. This extension will allow for an initial period of discovery limited to those facts relevant to Defendants' Anti-SLAPP Motion. This limited discovery period will allow the parties to resolve important liability issues at this early stage.

As discussed above, on November 19, 2015, Plaintiffs filed a Motion to Certify this Action as a Class Action Pursuant to Fed. R. Civ. P. 23 and Local Rule 23-1, prior to receiving any discovery relevant to class certification issues. Defendants planned to oppose this motion. On November 25, 2015, the Court struck the motion for failure to comply with the Court's Standing Order and Local Rule 7-3.

With this background, the parties agree that the schedule should allow for (1) an initial period of discovery by all parties limited to those facts relevant to Defendants' Anti-SLAPP Motion, (2) briefing and hearing on Defendants' Anti-SLAPP Motion, (3) if the Court denies the motion, completion of fact discovery, (4) expert reports and discovery, and (4) any further motions, and (5) pretrial exchanges and trial.

Within this ordering of pretrial events, the parties have discussed a proposed schedule and offer their respective positions on scheduling in the table below.

| Event | Agreed Date |
|---|---|
| Serve initial Rule 26(a) disclosures | December 4, 2015 |
| Cut-off for discovery related to Defendant's | January 29, 2016 |

| **Event** | **Agreed Date** |
|---|---|
| Anti-SLAPP Motion | |
| Defendants' Deadline to file Anti-SLAPP Motion | February 26, 2016 |
| Plaintiffs' Opposition to Anti-SLAPP Motion | March 25, 2016 |
| Defendants' Reply for Anti-SLAPP Motion | April 15, 2016 |
| Hearing On Anti-SLAPP Motion | To be set by the Court |
| Fact Discovery cut-off | September 30, 2016 |
| Expert reports on which party bears the burden of proof | October 21, 2016 |
| Rebuttal expert reports | 30 days following initial reports |
| Fact and Expert discovery cut-off | 30 days following rebuttal reports |
| Rule 56 motion cut-off | 20 days following fact and expert discovery cut-off |
| Suggested pre-trial conference date | March 14, 2017 |
| Suggested trial date | April 4, 2017 |

### B.     Settlement Efforts

The parties discussed settlement issues during the meeting of counsel. The parties agree that settlement appears unlikely at this time, but that the likelihood of settlement may increase after the parties have exchanged their respective contentions and discovery documents and responses. The parties agree that L.R. 16-15.4 Settlement Procedure No. 3 (private mediation) is appropriate.

### C. Length of Trial

The parties estimate 10 trial days for trial of this matter

### D. Additional Parties

Plaintiffs do not anticipate adding other parties. The parties recognize that other owners of pre-1972 Recordings may file actions against CBS and seek to have such matters related to this case. In that event, the Court may consider consolidating such actions with this action.

### E. Jury Trial

Plaintiff has made a demand for a jury trial. The parties are unaware of issues that require trial by the Court.

### F. Issues Affecting Status or Management

The parties are unaware of other issues affecting the status or management of this case. However, Plaintiffs note that the issue of whether owners of Pre-1972 Recording hold an exclusive right to publicly perform, reproduce, and distribute that recording under California state law is currently on appeal before the Ninth Circuit, *Flo & Eddie, Inc. v. Pandora, Inc.*, No. 15-55287 (9th Cir., filed Feb. 24, 2015). Plaintiffs believe that the outcome of this appeal will resolve at least one of the issues that CBS raised in its earlier-filed Anti-SLAPP Motion.

### G. Severance, Bifurcation, or Ordering of Proof

Other than the proposed sequencing of pretrial events set forth in the parties' proposed schedule above, the parties have no further proposals regarding severance, bifurcation, or other ordering of proof.

### H. Amendment of Pleadings

The parties do not anticipate amending pleadings further expect to the extent necessary to accommodate any consolidation with other actions that may be ordered by this Court.

### I. Issues That May Be Determined By Motion

The parties believe the following issues may be determined by motion.

1. Any motions brought by Defendants pursuant to Fed. R. Civ. P. 12 and 56;

2. Defendants' Anti-SLAPP Motion.

## J. Discovery Plan—FRCP 26(f) Topics

The parties discussed the discovery plan topics in FRCP 26(f)(3) and recommend the following:

### 1. Initial Disclosures

The parties agree to exchange the Rule 26(a) initial disclosures on December 4, 2015. The parties agree that no other changes should be made in the timing, form, or requirement for disclosures under Rule 26(a).

### 2. Subjects on which Discovery May Be Needed

The parties agree that discovery will be needed on issues of liability and damages. To that end, the parties have agreed to collect and produce, without requests for formal discovery, the following documents:

*Plaintiffs Will Collect and Produce*:

(The term "Pre-1972 Recordings" means the sound recordings, first fixed on a tangible medium of expression before February 15, 1972, that any of the Plaintiffs claims to own.)

    a. The original "master recording" of each Pre-1972 Recording.

    b. All documents that constitute the complete chain of title (ownership) for all Pre-1972 Recordings.

    c. All documents that constitute or memorialize any right, title, and/or interest, other than ownership, in all Pre-1972 Recordings.

    d. All agreements (e.g., licenses) or other instruments of transfer by which Plaintiffs granted a third party (including any other Plaintiff) any rights to re-issue, re-release, and/or re-master any of the Pre-1972 Recordings.

    e. All agreements (e.g., licenses) or other instruments of transfer by which Plaintiffs granted a third party (including any other Plaintiff) any rights to

7
JOINT RULE 26 REPORT

          release compilation albums (whether in the form of vinyl record, CD, or other form) containing any Pre-1972 Recordings.

f. If Plaintiffs or any parent, subsidiary, or other affiliated entity created, distributed, or sold any re-issued, re-released, or re-mastered versions of any Pre-1972 Recordings, all documents that constitute or memorialize any agreements (e.g., licenses) or other instruments of transfer by which Plaintiffs obtained the right to do so.

g. If Plaintiffs or any parent, subsidiary, or other affiliated entity created, distributed, or sold any compilation album (whether in the form of vinyl record, CD, or other form), all documents that constitute or memorialize any agreements (e.g., licenses) or other instruments of transfer by which Plaintiffs obtained the right to do so.

h. All copyright registrations or applications for copyright registrations for any version of any Pre-1972 Recording.

***Defendants Will Collect and Produce:***

a. Documents, including database excerpts, if any, sufficient to show which of Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) Defendants broadcast in California from August 17, 2011 to the present;

b. Documents, including database excerpts, if any, sufficient to show which of Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) Defendants digitally streamed to Internet Users in California from August 17, 2011 to the present;

c. Documents, including database excerpts, if any, sufficient to show which of Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) Defendants reproduced from August 17, 2011 to the present;

    d.    Documents, if any, sufficient to show how Defendants obtained each of the Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) that Defendants performed from August 17, 2011 to the present;

    e.    Documents sufficient to show who was responsible for obtaining all of the Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) that Defendants performed from August 17, 2011 to the present;

    f.    Documents sufficient to show how Defendants cataloged into their databases the Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) that Defendants performed from August 17, 2011 to the present;

    g.    Documents sufficient to show who was responsible for cataloging into Defendants' databases the Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) that Defendants performed from August 17, 2011 to the present;

    h.    Documents sufficient to show the extent to which Defendants reproduced, publicly performed and/or distributed in California the Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) in connection with Defendants' music services, from August 17, 2011to the present;

    i.    All licenses that Defendants granted to third parties to reproduce, publicly perform and/or distribute in California the Plaintiffs' Pre-1972 Recordings (regardless of whether the recording was the original recording or a re-issued or re-mastered version) that Defendants performed, from August 17, 2011 to the present;

1  j. All licenses that Defendants received, granting them the right to
2  reproduce, publicly perform, and/or distribute the Plaintiffs' Pre-1972
3  Recordings (regardless of whether the recording was the original
4  recording or a re-issued or re-mastered version) that Defendants
5  performed, for the period August 17, 2011 to the present.

**3. Electronically Stored Information**

The parties have discussed issues relating to disclosure or discovery of electronically stored information (ESI) and anticipate disclosure or discovery of ESI in this case. For ESI produced in this case, the parties agree that the following shall apply:

a. Email and E-Files shall be produced as TIFF (Tagged Image File) images, along with at least the following items of searchable metadata/information (where available), to make these documents reasonably usable:

    i. For Emails:

        From
        To
        Cc
        Bcc
        Sent Date
        Received Date
        Subject
        Text (Doc-Level)
        Hash Value (MD5 Hash, Shaw-1 or equivalent)

    ii. For Other Electronic Files:

        File Name
        Extension
        Author

Created Date

Modified Date

Text (Doc-Level)

Hash Value (MD5 Hash, Shaw-1 or equivalent)

Native Link (where applicable)

iii. For All Documents (Hard Copy Documents may exclude Family Range):

Custodian(s)

Bates Number Beginning

Bates Number Ending

Family Range Beginning (Parent/Child Order)

Family Range Ending (Parent/Child Order)

b. TIFF Images shall be produced in monochrome single-page format at 300 dpi resolution with Group IV compression and named by the Bates number each image represents. Images shall be labeled with unique filenames, zero-padded and with no spaces, which are unique and match the Bates number stamped on the image (i.e., PREFIX-00000001). In addition to any other reasonable formatting, images shall contain "speaker's notes" for MS PowerPoint files, hidden pages/columns/rows/text with any substantive content for MS Excel files and "tracked changes" for any MS Word documents.

c. Searchable metadata described above shall be produced as a Concordance Version 10 compatible load file (i.e., .dat) with an Opticon image cross reference file ( i.e., .opt or .log), which provides for the image range of each record. Text shall be delivered separate from the load file as separate text files which are named with the same Bates number name as the image files.

d. Removal of duplicate documents shall only be done on exact

duplicate documents based on MD5, SHA-1 or equivalent hash values, at the family level. De-duplication will be done across the entire collection (i.e., global level) and the Custodian field will list each Custodian, separated by a semicolon, who was a source of that document.

  e. To the extent that specific documents or document family groups require redaction, Optical Character Recognition ("OCR") may be provided as "text" for such documents.

  f. To the extent necessary in order to produce documents in a reasonably usable format, parties may also produce native files in connection with the production specifications referenced above. This format of production may be appropriate for files such as spreadsheets, databases and multimedia files where the TIFF images may not adequately communicate the substantive content or context of the file. When productions are made natively, parties should name the file consistent with the first Bates number represented by the document in the production (i.e., PREFIX-0000001.XLSX) and place a slipsheet in the production stating the document was produced in native form, contain the appropriate confidentiality brand and Bates number brand.

  g. Hard copy documents shall be produced as TIFF (Tagged Image File) images, along with the information spelled out in section I.C and in accordance with sections II and III as previously mentioned.

**4. Issues About Claims Of Privilege Or Of Protection As Trial-Preparation Materials**

The parties agree to enter into a joint stipulated protective order regarding all written discovery provided, deposition testimony taken, and documents and things produced during this action; that a proposed order be submitted to the Court; and that no party be entitled to discover confidential documents or information of any other

party until such protective order is entered by the Court. Defendants are evaluating the proposed protective order provided by Plaintiffs and expect to be able to reach agreement so that a proposed Protective Order promptly may be submitted to the Court.

The parties agree that privileged communications made after the date of the filing of this action need not be included on privilege logs.

### 5. Limitations on Expert Discovery

The following communications and materials relating to expert witnesses in this litigation shall not be the subject of discovery or inquiry at trial: (a) drafts of any expert disclosures or analysis (including reports, declarations, affidavits, or any other form of testimony); (b) communications, whether written or oral, between or among any expert, consultant and/or counsel for the party retaining said expert; (c) notes or preparatory materials taken by or on behalf of any expert; (d) emails, lists, agendas, outlines, memoranda, presentations, and letters, whether in draft or any other form, that are provided to, or by or on behalf of, any expert; and, (e) any other types of preliminary work product created by or on behalf of any expert. The foregoing exemptions shall not apply to any communications or materials, including those listed above, on which any expert, in any disclosure, expressly relies as a basis for an opinion. Such communications or materials shall be subject to discovery and inquiry at trial. Communications and materials exempt from discovery under this provision shall be treated as attorney work product, and need not be listed on any privilege log.

### 6. Limitations on Discovery

The parties do not propose any changes on the limitations on discovery set forth in the Federal Rules of Civil Procedure.

### 7. Other Orders Under Rule 26(c) Or Under Rule 16(b) and (c)

Other than a protective order covering confidential information produced by a party, the parties are unaware of any further orders shat the Court should make at this time.

### K. Additional Local Rule Matters

#### 1. Complex Case

The parties agree that this is not a complex case requiring any of the procedures of the Manual for Complex Litigation.

#### 2. Motion Schedule

In accordance with the proposed schedule set forth above, the parties agree that any further Anti-SLAPP Motion or dispositive motion on liability issues shall be filed by Defendants on or before March 18, 2016. The parties further agree that any further dispositive or partially dispositive motions will be filed within 20 days after the close of expert discovery.

DATED: November 30, 2015    Respectfully submitted,

MCKOOL Smith HENNIGAN, P.C.

By: */s/ Roderick G. Dorman*
RODERICK G. DORMAN (SBN 96908)
rdorman@mckoolsmithhennigan.com
ROBERT E. ALLEN (SBN 166589)
rallen@mckoolsmithhennigan.com
LAWRENCE M. HADLEY (SBN 157728)
lhadley@mckoolsmithhennigan.com
ALAN P. BLOCK (SBN 143783)
ablock@mckoolsmithhennigan.com
865 S. Figueroa St., Suite 2900
Los Angeles, CA 90017
T: (213) 694-1200; F: (213) 694-1234

MILLER LAW LLC

By: /s/ Marvin A. Miller
MARVIN A. MILLER (ARDC 1916769)
mmiller@millerlawllc.com
ANDREW SZOT (ARDC 6274264)
aszot@millerlawllc.com
KATHLEEN E. BOYCHUCK (ARDC 6288035)
115 S. LaSalle St., Suite 2910
Chicago, IL 60603
T: (312) 332-3400; F: (312) 676-2676

*Attorneys for Plaintiffs and the Proposed Interim Lead Counsel for Plaintiffs*


By: */s/ Robert M. Schwartz*
Robert M. Schwartz

IRELL & MANELLA LLP
Robert M. Schwartz (SBN 117166)
(rschwartz@irell.com)
Victor Jih (SBN 186515)
(vjih@irell.com)
Joshua C. Lee (SBN 268606)
(jclee@irell.com)
Andrew J. Strabone (SBN 301659)
(astrabone@irell.com)

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 30, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

*/s/ Lawrence M. Hadley*
Lawrence M. Hadley