1  IRELL & MANELLA LLP
   Robert M. Schwartz (SBN 117166)
2      (rschwartz@irell.com)
   Victor Jih (SBN 186515)
3      (vjih@irell.com)
4  Andrew J. Strabone (SBN 301659)
       (astrabone@irell.com)
5  Amit Gressel (SBN 307663)
       (agressel@irell.com)
6  1800 Avenue of the Stars, Suite 900
7  Los Angeles, California 90067-4276
   Telephone:  (310) 277-1010
8  Facsimile:   (310) 203-7199
9
   Attorneys for Defendants
10 CBS Corporation and CBS Radio Inc.
11

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABS ENTERTAINMENT, INC., an Arkansas corporation, BARNABY RECORDS, INC., a California corporation, BRUNSWICK RECORD CORPORATION, a New York corporation and MALACO, INC., a Mississippi corporation, each individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br>  v.<br><br>CBS CORPORATION, a Delaware corporation; CBS RADIO INC., a Delaware corporation; and DOES 1 through 10,<br><br>    Defendants. | Case No. 2:15-cv-6257-PA (AGRx)<br><br>Case Filed:  August 17, 2015<br>Trial Date:  December 13, 2016<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:   May 2, 2016<br>Time:   1:30 p.m.<br>Place:  Courtroom 15 – Spring St.<br>Before: Hon. Percy Anderson |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...............................................................................................1

II. PLAINTIFFS HAVE NOT SHOWN THAT CBS PERFORMED THEIR SOUND RECORDINGS IN CALIFORNIA. ....................................2

    A. Plaintiffs Concede They Have No Claim as to 108 Works. ................2

    B. Plaintiffs Cannot Meet Their Burden for the Remaining Works..........2

III. CBS PLAYED POST-1972 DIGITAL VERSIONS THAT ARE GOVERNED BY FEDERAL COPYRIGHT LAW. ......................................4

    A. CBS Did Not Play Plaintiffs' Original Pre-1972 Recordings. .............4

    B. The Post-1972 Remastered Recordings Are Protected Under Federal Copyright Law As Derivative Works. ....................................7

    C. Plaintiffs' Four "Additional" Arguments Have No Merit. .................11

IV. CONCLUSION ................................................................................................12

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

- i -

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agee v. Paramount Commc'ns.*,
    853 F. Supp. 778 (S.D.N.Y. 1994) ................................................................. 7

*Atl. Recording Corp. v. Howell*,
    554 F. Supp. 2d 976 (D. Ariz. 2008) .............................................................. 4

*Cafasso v. Gen.l Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ........................................................................ 2

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
    262 F. Supp. 2d 204 (S.D.N.Y. 2003) ............................................................ 8

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
    4 N.Y.3d 540 (2005) ................................................................................. 7, 8

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980) ........................................................................... 7

*Elohim EPF USA, Inc. v. Total Music Connection, Inc.*,
    No. 14-CV-02496-BRO, ECF. No. 197 (C.D. Cal. Oct. 1, 2015) .................. 4

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
    122 F.3d 1211 (9th Cir. 1997) ........................................................................ 7

*Equals Three, LLC v. Jukin Media, Inc.*,
    2015 WL 6146031 (C.D. Cal. Oct. 13, 2015) ............................................... 2

*Ets-Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000) ...................................................................... 11

*Fazio v. City and Cty. of S.F.*,
    125 F.3d at 1328 (9th Cir. 1997) .................................................................... 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ........................................................................................ 9

*Fox Broad. Co. v. Dish Network LLC*,
    2015 WL 1137593 (C.D. Cal. Jan. 20, 2015) ................................................. 4

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*,
    118 F.3d 199 (4th Cir. 1997) .......................................................................... 4

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

- ii -

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)


Case 2:15-cv-06257-PA-AGR Document 92 Filed 04/18/16 Page 4 of 16 Page ID #:3504

**Page(s)**

*Kim Seng Co. v. J & A Importers, Inc.*,
  810 F. Supp. 2d 1046 (C.D. Cal. 2011)............................................................... 11

*L. Batlin & Son, Inc. v. Snyder*,
  536 F.2d 486 (2d Cir. 1976) ........................................................................... 7, 9

*Maljack Prods., Inc. v. UAV Corp.*,
  964 F. Supp. 1416 (C.D. Cal. 1997) ........................................................ 1, 9, 10

*N.Y. Times Co. v. Tasini*,
  533 U.S. 483 (2001) ............................................................................................ 7

*Pryor v. Jean*,
  2014 WL 5023088 (C.D. Cal. Oct. 8, 2014) ................................... 1, 9, 10, 12

*TufAmerica, Inc. v. Codigo Music LLC*,
  2016 WL 626557 (S.D.N.Y. Feb. 16, 2016) ..................................................... 11

*U.S. v. Taxe*,
  380 F. Supp. 1010 (C.D. Cal. 1974) ................................................................... 7

**Other Authorities**

Nimmer on Copyright § 7.02[B] ................................................................................. 11

U.S. Copyright Office, Library of Congress, Circular No. 56, *Copyright Registration of Sound Recordings* 3 (2014) ....................................................... 9

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

- iii -

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRX)

## I. INTRODUCTION

Plaintiffs' Opposition makes clear that there is no genuine dispute over the key facts raised by this Motion. The parties agree that CBS broadcast digital sound recordings taken from CDs and downloads. The parties and their experts agree that, as a result of remastering, CBS's recordings are not the same as the pre-1972 ones plaintiffs claim to own, in terms of such things as tone equalization, spatial imagery/stereoization, and loudness, and that they sound differently than plaintiffs'. The parties also agree that the remastered recordings "embody" the original ones. And CBS will assume, for this Motion, that none of its recordings were remixed or edited (no sounds were deleted and no totally new ones were added).

Thus, the parties' only dispute is a *legal* one: Can a sound recording that was changed after 1972 through remastering, in the many ways these recordings were changed, be a derivative work governed by federal copyright law, even if it was not also remixed or edited? The answer is "yes," as long as the changes meet the low bar of originality under federal copyright law. Plaintiffs could have opposed this Motion by doing a work-by-work analysis of the changes made by remastering. They chose not to. Instead, they base their Opposition on whether each recording was remixed or edited, to support a blanket legal proposition that a remastered work that is not *also* altered in those ways cannot be copyrighted. That proposition is flatly wrong. To support it, plaintiffs rely on a New York case discussing New York law and not federal copyright law, miscite the Copyright Office's governing circular, and fail to distinguish the two cases on point, *Maljack* and *Pryor*.

As a last resort, plaintiffs make four "additional" arguments at the end of their Opposition. None has merit. Indeed, if any were accepted, even post-1972 digital sound recordings that have been completely remixed could not be federally copyrighted—a result plaintiffs concede is contrary to the law.

Plaintiffs have the burden of proving that CBS played the pre-1972 recordings plaintiffs claim to own, as opposed to the federally copyrighted post-1972 derivative

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

works CBS aired. Plaintiffs failed to do so. CBS is entitled to summary judgment.

## II. PLAINTIFFS HAVE NOT SHOWN THAT CBS PERFORMED THEIR SOUND RECORDINGS IN CALIFORNIA.

As a threshold matter, plaintiffs must prove, with admissible evidence, that CBS played plaintiffs' sound recordings in California. Plaintiffs have not done so.

### A. Plaintiffs Concede They Have No Claim as to 108 Works.

Plaintiffs make no showing as to 108 of the works listed in Schedules A1-A4 to the First Amended Complaint. SUF 6. For these works, plaintiffs present no proof that CBS played even *any* version of the sound recordings plaintiffs claim to own. *See* Block Decl ¶ 23. As such, CBS is entitled to summary judgment for these works, which CBS has identified in its Revised [Proposed] Order.

### B. Plaintiffs Cannot Meet Their Burden for the Remaining Works

There are three issues with plaintiffs' evidence for the remaining 100 works.[1]

First, plaintiffs' evidence is inadmissible. Plaintiffs' Opposition relies on third-party hearsay reports from either Triton or Mediabase, without establishing any foundation for their reliability or accuracy. *See* CBS's Evidentiary Objections at 1. Plaintiffs try to sidestep these evidentiary problems by relying on an email from CBS's litigators that identifies songs that CBS "may have" played and declarations from CBS witnesses that acknowledge there "may exist" records (such as the hearsay reports from Triton and Mediabase) referring to some of plaintiffs' songs. But speculation that a song "may have" been played does not mean that it was. *See Cafasso v. Gen.l Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (no speculation). And acknowledging there "may be" records does not mean those records are admissible. *See Equals Three, LLC v. Jukin Media, Inc.*, 2015 WL 6146031, at *4 (C.D. Cal. Oct. 13, 2015) ("the Court may not consider inadmissible hearsay evidence that could not be presented in an admissible form").

---

[1] That number consists of 60 works listed on Schedules A1-A4 plus 40 additional works that plaintiffs put at issue in their Opposition but that were not identified in the Complaint, nor in its attached schedules, nor during discovery. Opp. at 12; Block Decl. at 16 n.1.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533 - 2 - REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

Second, it is not enough for plaintiffs to show that CBS publicly performed a recording that bears merely the same title and artist as a pre-1972 sound recording that plaintiffs claim to own. As plaintiffs' own expert Paul Geluso points out, 17 of CBS's sound recordings contain the same artist name and song title as one of plaintiffs' but contain a completely different performance. Geluso Decl. ¶ 10. For example, Mr. Geluso notes that recordings for Al Green's *I Can't Get Next To You* are "a different performance from the sound recording" plaintiffs claim to own. *Id.* at ¶ 40. He saw similar issues with Jackie Wilson's *I'm Coming On Back To You*, *id.* at ¶ 50, Mahalia Jackson's *His Eye Is On the Sparrow*, *In the Upper Room*, *Silent Night*, *id.* at ¶ 63-65, Otis Clay's *That's How It Is*, *id.* at ¶ 66, The Chordettes's *Born To Be With You*, *id.* at ¶ 78, The Crickets's *Oh Boy*, *id.* at ¶ 80, and The Everly Brothers's *Like Strangers*, *id.* at ¶ 85. Plaintiffs' declarants agreed: at their depositions they admitted that their artists recorded the same song multiple times, for different labels. *See, e.g.,* Couch Depo. at 99:19-101:2. Without actual knowledge of each album from which the recordings come, it would be "impossible" to know which performance, for which label, was actually played. *See* Kartiganer Depo. at 77:23-79:7. The problem with plaintiffs' approach is that it assumes any recording with the same title and artist must be theirs. But a report showing that CBS may have played nothing more specific than Al Green's *I Can't Get Next to You* does not prove whether CBS played plaintiffs' 1971 version, Capitol Records' 2007 remastered version, or a 1975 live version.

Third, even if the Triton reports were admissible, they do not show which recordings were performed *in California*. The Triton reports are aggregates: They combine Internet-only stations on Radio.com and all of CBS's simulcast stations, whether in California, New York or, for example, Georgia. Even if, as plaintiffs say, the reports are "substantial evidence of CBS' publicly performing Plaintiffs' sound recordings" *somewhere*, they are not evidence that CBS did so *in California*.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

- 3 -

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-cv-6257-PA (AGRx)

Plaintiffs attempt to overcome this problem by articulating a new theory: that CBS has "made available" these sound recordings. Plaintiffs invite the Court to adopt this controversial theory from federal copyright law, and argue that simply because a Californian "may have" or "could have" accessed a broadcast, CBS violated state common law because the recording was "made available," even if no one in California ever actually accessed it. The Court instructed the parties not to brief whether California even recognizes a common law public performance right. Without determining whether that right exists, the Court cannot assume that it can be stretched to reach a merely "made available" situation. CBS disputes that.[2] But there is no need to reach the issue, given the other defects with plaintiffs' evidence.

### III. CBS PLAYED POST-1972 DIGITAL VERSIONS THAT ARE GOVERNED BY FEDERAL COPYRIGHT LAW.

Even assuming CBS played all 100 of plaintiffs' songs, and did so in California, it is undisputed that CBS played only *post*-1972 remastered versions. SUF 4. As plaintiffs concede, if these post-1972 works are protected by federal copyright, their claims fail. Plaintiffs can maintain their claims only if they prove that these post-1972 versions are the *same* as their pre-1972 versions. They can't.

#### A. CBS Did Not Play Plaintiffs' Original Pre-1972 Recordings.

Dr. Durand Begault performed forensic acoustic analysis on the sound recordings at issue, the results of which show:

> [T]he sound recordings of each of the performances that plaintiffs claim to own are **not** the sound recordings that CBS used. That is the case for **all 57** of plaintiffs' claimed songs whose recordings I

---

[2] Plaintiffs rely on *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997) and *Elohim EPF USA, Inc. v. Total Music Connection, Inc.*, No. 14-CV-02496-BRO, ECF. No. 197 at 22 (C.D. Cal. Oct. 1, 2015). There is no reason to believe that a "made available" theory would be recognized as part of judge-made common law when these authorities have often been rejected even as a matter of federal copyright law. *See Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) ("[t]he majority of district courts have rejected the recording companies' 'making available' theory because *Hotaling* is inconsistent with the Copyright Act.… Merely making an unauthorized copy of a copyrighted work available to the public does not violate a copyright holder's exclusive right of distribution."); *Fox Broad. Co. v. Dish Network LLC*, 2015 WL 1137593, at *21 (C.D. Cal. Jan. 20, 2015) (rejecting "made available" theory).

> compared. In other words, ***CBS did not use any version of the sound recordings that plaintiffs' claim to own***. Instead, CBS used different versions of those sound recordings. Based on the results of these tests, the versions that CBS has used are either: (1) "remastered" versions of the sound recordings plaintiffs claim to own; (2) remastered versions of previously-remastered, and thus different, versions of the sound recordings plaintiffs claim to own; or (3) a completely different performance than the sound recording plaintiffs claim to own.

*See* Declaration of Durand Begault, Ph.D., ¶ 16 (emphasis in original).

Even if accepted, plaintiffs' opposition evidence is incapable of creating material issues of fact on this core issue. Although plaintiffs' expert, Paul Geluso, argues that the remastered recording incorporates the original and that there is no evidence of remixing, editing (the addition or removal of sounds), Mr. Geluso agrees that CBS's recordings differ from plaintiffs' sound recordings in terms of spectral content (tonal characteristics and timbre), loudness range, and spatial imagery/stereoization. *See* Geluso Decl., ¶¶ 27-29 (those characteristics of the CBS sound files are "not identical" to those of the plaintiffs' sound files). When deposed, he conceded that he does not disagree with *any* of the results of Dr. Begault's four tests of each sound recording (Geluso Depo. at 121:22-123:4) or that the differences Dr. Begault found between CBS's recordings and plaintiffs' counterparts are noticeable to the listener. *Id.* at 190:8-21.[3]

William Inglot, who personally remastered many of the recordings, explained the many discretionary and subjective decisions involved. Inglot Decl. ¶ 24. Plaintiffs try to ignore that testimony by claiming there is no evidence that CBS played Mr. Inglot's remastered versions. Not true. Plaintiffs note in their Separate

---

[3] As explained in CBS's Objections, Mr. Geluso's declaration contributes nothing. It reduces to the irrelevant assertion that the CBS versions of these songs are "based on" the same original studio performance as plaintiffs' version. *Id*. at 239:5-25. And the impressive looking charts attached to his declaration are mere stagecraft, designed to give a scientific veneer to Mr. Geluso's subjective impressions from listening to the recordings; when confronted with those graphs, which tested only the first *five seconds* of each recording, he was unable to tell whether one recording differed from another without listening to the recordings. *Id.* at 256:21-258:16; 262:5-263:20. If he can't divine that information from his own results, the Court cannot expect a fact-finder to do so, either. Mr. Geluso took other liberties, including burying test results that confirmed the work of CBS's expert on the differences between the recordings. *See* CBS Objections at 13-15.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533 - 5 - REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

Statement that CBS's Radio.com records show the song and album titles for many recordings. Pls' Sep. Stmt. ¶ 2-3. Plaintiffs have not introduced that evidence because those records show that many of the recordings played on Radio.com came from CDs that Mr. Inglot remastered. If plaintiffs wish to rely on third party records to evidence the songs that CBS played, those records also suggest that those songs came from albums that Mr. Ingot remastered. *Compare* Block Decl. Ex. 7 (listing albums by, e.g., King Floyd, The Chi-Lites, and The Chordettes) *to* Inglot Decl. ¶¶ 58, 51, 40 (identifying the same albums as among those Mr. Inglot remastered).

Regardless of whether Mr. Inglot remastered a particular work, his testimony details the many creative and subjective decisions that go into remastering. Plaintiffs pejoratively label all remastering work (whether by Mr. Inglot or anyone else) as "mechanical." They insist that, because machines and knobs are involved, the processes involved no human direction or control. But at deposition, plaintiffs agreed that the choices Mr. Inglot and other engineers made in remastering these songs were creative and subjective. *See* Tarnopol Depo. 80:7-16 (deciding levels of each track (a.k.a. "equalization," *id*. 119:9-11) is creative); *see* Kartiganer Depo. 60:13-61:4 (remastering is subject to taste and opinion). Thus, even if machines are used, "[r]emastering a sound recording is not a 'drag-and-drop' conversion of an analog recording to a new digital format." Inglot Decl. ¶ 29.

Plaintiffs' expert agrees with Mr. Inglot: "Mr. Inglot provided a highly informative report regarding the role of the mastering engineer and the process a sound recording undergoes when re-mastering occurs. It is clear that many of the CBS Sound Files were [] re-mastered." Geluso Decl. ¶ 19. Mr. Geluso concedes that remastering engineers must make many subjective decisions:

- "making changes to the spectral balance, the loudness range and/or the stereo imaging to a sound recording is commonplace," ¶ 18;
- "Al Green's commercial release of 'Let's Stay Together' can be re-mastered many times to sound more punchy, bright, or dull," ¶ 21;
- "The re-mastering process may include processing adjustments—some of which may affect sound quality …. Sound quality is a value judgment that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

- 6 -

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

- can be made subjectively or can be measured objectively. The spectral content, loudness range, stereo image and naturalness of a sound recording are all attributes related to sound quality," ¶ 25-26;
- "… perceptual evaluations of sound quality are important [and] perceptual concepts may extend to preference and meaning," ¶ 26;
- "Determining the correct amount of compression to apply to a sound recording can be a matter of taste. One engineer may prefer more compression than another." ¶ 28.

Thus, remastering sound recordings is not comparable to the cases plaintiffs cite, which were limited to mechanical or medium changes, with no subjectivity or originality and virtually no changes to the work itself. Opp. at 18-19.**[4]**

It is plaintiffs' burden to prove that the sound recordings CBS played are not governed by federal copyright law. With CBS having shown that remastering sound recordings can create derivative works, plaintiffs must adduce evidence that none of the changes made during remastering is sufficient to be copyrighted. *See Fazio v. City and Cty. of S.F.*, 125 F.3d 1328, 1331 (9th Cir. 1997). Plaintiffs have failed to do so. And as to the 40 works plaintiffs identified for the first time only in their Opposition, neither expert has analyzed them. But now that plaintiffs have injected those works into this case, their burden extends to those works, as well. Yet plaintiffs did not even attempt to show that CBS's versions are the same as plaintiffs' or that the remastering did not contribute anything original. Thus, CBS is entitled to prevail on those 40 newly added works.

### B. The Post-1972 Remastered Recordings Are Protected Under Federal Copyright Law As Derivative Works.

Plaintiffs claim that a remastered sound recording cannot be subject to federal copyright. They base that argument on *Capitol Records, Inc. v. Naxos of Am., Inc.*,

---

**[4]** *See N.Y. Times Co. v. Tasini*, 533 U.S. 483, 502 (2001) (newspapers articles were placed into an electronic database without any changes); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980) (involving "virtually indistinguishable" copies of plastic figure toys); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211 (9th Cir. 1997) (three-dimensional costumes were based on two-dimensional figures, with no changes to the underlying figures); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir. 1976) (involving replica based on figure in the public domain); *Agee v. Paramount Commc'ns.*, 853 F. Supp. 778 (S.D.N.Y. 1994) (re-recording of a sound recording onto a television program); *U.S. v. Taxe*, 380 F. Supp. 1010 (C.D. Cal. 1974) (criminal copying).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533 - 7 - REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

4 N.Y.3d 540 (2005). Not only are plaintiffs incorrect, but their reliance on *Naxos* is misguided: *Naxos* never addressed the question of whether a remastered sound recording is a separate work, subject to federal copyright law.

In *Naxos*, the question was whether a defendant who created an unauthorized derivative work could, as a matter of New York law, rely on a "new work" defense against a claim of common law copyright infringement. *Id.* at 564. The defendant argued that the plaintiff's work lacked value, that the defendant's contributions created their value, and that, thus, the defendant should be able to claim a defense to infringement because it created a transformative "new work." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 262 F. Supp. 2d 204, 208-09 (S.D.N.Y. 2003). The issue was whether, under state law, defendant could argue a type of "fair use" defense for an *unauthorized* derivative work by claiming that it transformed the plaintiff's work into a "new work." *Id.* The court said no. But its opinion has nothing to do with federal copyright law, or whether an *authorized* remastered recording is a derivative work under federal law. Here, all of the CBS recordings were authorized.

The correct rule of law is set forth in the U.S. Copyright Office's Circular on "Copyright Registration for Sound Recordings," which plaintiffs misquote. Plaintiffs say that a derivative work cannot be copyrighted unless it was created through remixing, editing, or by adding or removing sounds. Opp. at 8. Plaintiffs leave out the express language stating that remastering a sound recording *can* create a new derivative work. To remove all misunderstanding, here is the Circular's entire section on what types of sound recordings can constitute derivative works:

> **Derivative Works** · A derivative sound recording is one that incorporates some preexisting sounds that were previously registered or published, or sounds that were fixed, before February 15, 1972. The preexisting recorded sounds must have been rearranged, remixed, **or otherwise altered in** sequence or **character**, or there must be some additional new sounds. Further, the new or revised sounds must contain at least a **minimum amount of original sound recording authorship.** This new authorship is the basis for the copyright claim. When completing the application, identify the preexisting material and new material/authorship included in the claim. Be as complete as space allows.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533 - 8 - REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

> **Examples of derivative sound recordings that generally can be registered include** the following:
> • a remix from multitrack sources
> • **a remastering** that involves multiple kinds of creative authorship, such as **adjustments of equalization**, sound editing, and **channel assignment**
> Mechanical changes or processes applied to a sound recording, such as a change in format, declicking, and noise reduction, generally do not represent enough original authorship to be registered.

U.S. Copyright Office, Library of Congress, Circular No. 56, *Copyright Registration of Sound Recordings* 3 (2014) (Ex. 4 to Strabone Decl.).  The Copyright Office supports CBS on the two legal issues raised in this motion: (1) federal copyright law recognizes derivative works based on pre-1972 sound recordings; and (2) the kind of remastering of the sound recordings at issue, as identified by Dr. Begault in his analysis and Mr. Inglot in his declaration, are enough to create a derivative work.

This rule of law is confirmed in the only two cases on point, *Maljack* and *Pryor*.  *Maljack* confirms that the "degree of originality required to create a copyrightable derivative work is low."  *See Maljack Prods., Inc. v. UAV Corp.,* 964 F. Supp. 1416, 1426 (C.D. Cal. 1997).[5]  *Maljack* also confirms that remastered sound recordings can be derivative works.  Although *Maljack* concerned a motion picture soundtrack, the Court held that motion picture soundtracks were analogous to sound recordings for purposes of a derivative work analysis.  *Id*. at 1428.  One of the plaintiffs "digitized the soundtrack […], remixed it, stereoized the previously monaural track, and upgraded the quality of the sound, all of which required a creative mixing and balancing of sounds."  *Id*.  The Court pointed out that "[t]he Copyright Office accepts alterations such as remixing and stereoizing as sufficiently

---

[5] *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.").  Plaintiffs read Second Circuit cases to make this threshold seem more daunting than it is.  Opp. at 23-24.  But that Circuit has recognized this same low bar of originality:  "The test of originality is concededly one with a low threshold in that (a)ll that is needed … is that the author contributed something more than a merely trivial variation, something recognizably his own."  *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) (internal quotations omitted).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

- 9 -

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

original to constitute derivative works." *Id.*

*Pryor* further confirms that remastering processes, such as tone equalization, can create a derivative work. *Pryor v. Jean*, 2014 WL 5023088 at *4 (C.D. Cal. Oct. 8, 2014). Citing to the leading copyright treatise, the court recognized that remastering can create a derivative work:

> In some cases, the editing of a previously recorded work may in itself involve such originality as to command copyright, as where it involves such acts as equalizing, changing the highs and lows, providing more bass and treble, adding echo, or abridging by making discretionary and not obvious internal cuts.

*Pryor*, 2014 WL 5023088 at *4. Although the underlying sound recordings in this case were created before 1972, the analysis is no different than in *Pryor*. Plaintiffs claim that *Pryor* is inapplicable because "It is undisputed that Plaintiffs' original master recordings and CBS's copies capture the same performance and nobody has licensed any remaster to CBS." Opp. at 20. But none of that distinguishes *Pryor*. As here, *Pryor* involved original and remastered recordings that used elements from the same performance. CBS does not need a license to play the remastered recording because under federal law, no license is needed for terrestrial broadcasts and a statutory compulsory license applies to any performances over the Internet.

Under the controlling and relevant authority, remastered sound recordings are copyright-protected derivative works if the recordings meet the copyright law's minimum threshold for originality. CBS's remastered recordings are the product of the same artistic judgments that the case law and the Copyright Office contemplate.

To blunt this, plaintiffs say that they have not sought federal copyright for the remastered sound recordings. That is not true. As shown in the liner notes to "The Best of Al Green: Millennium Collection," Hi Records (the predecessor-in-interest to Plaintiff ABS) claimed a 2000 sound recording copyright in *Tired of Being Alone*, designated by the "℗" symbol. *See* Sottolano Decl. Ex. 1 at 2.[6] Moreover, it is an

---

[6] Plaintiffs object to the liner notes and dispute what may have been registered. But they did not contest the notes' authenticity, which are party-authorized admissions. CBS offers them only to highlight copyrightability, an issue on which plaintiffs bear the burden.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533 - 10 - REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

irrelevant issue: A copyright owner does not need to claim or register a work before the rights under federal copyright law attach to it. Nimmer on Copyright § 7.02[B].

### C. Plaintiffs' Four "Additional" Arguments Have No Merit.

As backup, plaintiffs bring four "additional" arguments against federal copyright protection for remastered sound recordings. Each fails.

First, plaintiffs say that remastered sound recordings cannot be derivative works because the pre-1972 sound recordings are not copyrightable under federal law. They base this on a misreading of *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068 (9th Cir. 2000). In *Ets-Hokin*, the court analyzed whether photographs of an alcohol bottle used in advertising were derivative works based upon the bottle, or constituted new original works. The court held that because the bottle shape was not copyrightable, the photographs could not be derivative works but should be considered original works. *Id.* at 1079. The court never held that the non-copyrightability of the bottle meant that the photographs could not be copyrighted. *See also Kim Seng Co. v. J & A Importers, Inc.*, 810 F. Supp. 2d 1046, 1056 (C.D. Cal. 2011). Regardless, this is a non-issue. The *Ets-Hokin* classification issue never arises for sound recordings: Every sound recording (remastered or otherwise) is a derivative work of the underlying federally protected composition. *See TufAmerica, Inc. v. Codigo Music LLC*, 2016 WL 626557, at *15 (S.D.N.Y. Feb. 16, 2016).

Second, plaintiffs contend that because the equalization, spatial imagery/ stereoization, and loudness changes cannot be separated from plaintiffs' original sound recordings, they cannot be derivative works. The cases plaintiffs cite stand for the proposition that there must be *some* independent, original expression, which is exactly what sound engineers are hired to do and what both sides' experts agree occurred. No case supports plaintiffs' leap that the new contributions have to be perceptible after removing all traces of the original work. Indeed, the argument proves too much: If true, even *remixed* recordings could not be copyrightable derivative works, which plaintiffs (and the Copyright Office) concede is not true.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533 - 11 - REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)

Third, plaintiffs argue that the preparation of these derivative works was not authorized. This is an irrelevant distraction. Plaintiffs submitted four identical, lawyer-written declarations, each stating that they did not authorize the creation of "derivative works" and would not have authorized any "substantial, non-trivial changes." At their depositions, however, the declarants admitted that they lacked foundation for these statements, were not certain what those terms even mean, and simply signed onto the legal conclusions that their lawyer put in front of them. *See* CBS's Evidentiary Objections at 4-8. In fact, each declarant admitted that he authorized the remastered versions that were released, has no issue with the acoustic optimization process that occurs during remastering, and has pocketed the revenue from the remastered recordings for decades, without objecting. *Id.*

Fourth, plaintiffs argue that, because protection for a derivative work extends only to what is added "the unauthorized use of the pre-existing material … is an infringement." Opp. at 25. But as long as CBS has the right to use those post-1972 recordings, plaintiffs cannot use the original pre-1972 recordings to block CBS's use. The plaintiffs in *Pryor* made the same claim, and Judge Pregerson rejected it: "Plaintiffs have the exclusive right to duplicate, rearrange, or remix the 'actual sounds' of [their original sound recording]. Defendants did not do anything with those 'actual sounds.' Rather, Defendants used licensed 'actual sounds' from the [remastered recording]." *Pryor*, 2014 WL 5023088 at *4.

## IV. CONCLUSION

For all of these reasons, the Court should grant summary judgment for CBS.

Dated: April 18, 2016

Respectfully submitted,

By: /s/ Robert M. Schwartz
   Robert M. Schwartz
   Attorneys for Defendants

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8585533

- 12 -

REPLY ISO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:15-CV-6257-PA (AGRx)