UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes Kerr | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court is a Motion for Summary Judgment filed by defendants CBS Corporation and CBS Radio Inc. (collectively "CBS" or "Defendants"). (Docket No. 82.) Plaintiffs ABS Entertainment Inc., Barnaby Records, Inc., Brunswick Record Corporation, and Malaco Inc. (collectively "Plaintiffs") have filed an Opposition.[1/] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for May 2, 2016, is vacated, and the matter taken off calendar.

**I.   Background**

   **A.   The Parties**

There are four named plaintiffs in this action: (1) ABS Entertainment, Inc. ("ABS"), the owner of sound recordings made by Al Green, Willie Mitchell, Ace Cannon, and Otis Clay; (2) Barnaby Records, Inc. ("Barnaby") the owner of sound recordings made by Andy Williams, Johnny Tillotson, The Everly Brothers, Lenny Welch, Ray Stevens, and The Chordettes; (3) Brunswick Record Corporation ("Brunswick"), the owner of sound recordings made by Jackie Wilson, The Chi-Lites, The Lost Generation, The Young-Holy Unlimited, and Tyrone Davis; and (4) Malaco, Inc. ("Malaco"), the owner of sound recordings made by King Floyd, Mahalia Jackson, and The Cellos.[2/]

---

[1/]   Plaintiffs have also filed a Notice of Supplemental Authority (Docket No. 98) to which CBS has filed an Opposition (Docket No. 99). To the extent the parties' filings include additional arguments, the parties did not obtain leave from the Court to do so. See L.R. 7-10. Accordingly, the filings are stricken and will not be considered by the Court. Moreover, Plaintiffs' Notice is not well taken because it urges the Court to draw a wholly unwarranted inference from the Second Circuit's certification of a question of New York state law to the New York Court of Appeal.

[2/]   Plaintiffs may be improperly joined in this action. See L.R. 19-2 ("No complaint or petition alleging violation of copyright . . . shall contain causes of action of different owners claiming violation of different copyrights . . . unless the complaint or petition is accompanied by a declaration of counsel setting forth grounds showing that the interests of justice will be advanced, and multiplicity of actions avoided, by such joinder."). Plaintiffs' counsel has not submitted a declaration setting forth grounds

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

    Plaintiffs own sound recordings of musical performances which were initially fixed prior to February 15, 1972 ("pre-1972 Sound Recordings"). (Declaration of Don Wilson in Support of Plaintiffs' Opposition ("Wilson Decl."), ¶ 2; Declaration of Lawrence Kartiganer in Support of Plaintiffs' Opposition ("Kartiganer Decl."), ¶ 2; Declaration of Paul Tarnopol in Support of Plaintiffs' Opposition ("Tarnopol Decl."), ¶ 2; Declaration of Thomas J. Couch Sr. in Support of Plaintiffs' Opposition ("Couch Decl."), ¶ 2.)[3/] For decades, Plaintiffs have been engaged in the business of distributing, selling and licensing the reproduction, distribution, and performance of sound recordings for use in albums, CDs, audiovisual works, and for streaming and downloading over the Internet. (Wilson Decl. ¶ 5; Kartiganer Decl. ¶ 5; Tarnopol Decl. ¶ 5; Couch Decl. ¶ 5.)

    Plaintiffs' pre-1972 Sound Recordings were originally recorded in an analog format because the digital format did not exist at the time. (Wilson Decl. ¶ 3; Kartiganer Decl. ¶ 3; Tarnopol Decl. ¶ 3; Couch Decl. ¶ 3.) Over the years, as the prevailing format for music storage changed, Plaintiffs had their pre-1972 Sound Recordings mastered, and sometimes remastered, into the newest formats. (Wilson Decl. ¶¶ 3-4; Kartiganer Decl. ¶¶ 3-4; Tarnopol Decl. ¶¶ 3-4; Couch Decl. ¶¶ 3-4.) Additionally, Plaintiffs entered into license agreements which allowed for the reproduction, remastering, and new distribution of Plaintiffs' works, including as part of compilation albums with other sound recordings. (Wilson Decl. ¶ 6; Kartiganer Decl. ¶ 6; Tarnopol Decl. ¶ 6; Couch Decl. ¶ 6.)[4/]

    Defendant CBS delivers music content through terrestrial broadcast radio, as well as through digital transmissions streamed over the internet and through mobile applications. ( FAC ¶ 2.) At issue in this case is whether CBS infringed Plaintiffs' state law copyrights by publicly performing, either through terrestrial radio broadcasts or digital internet streams, any of Plaintiffs' pre-1972 Sound Recordings.

    **B.**    **Statutory Scheme**

    Because of its relevance to the dispute before the Court, the Court will briefly summarize the history leading to the filing of this motion for summary judgment. Federal copyright law differentiates between songs (the musical composition of actual notes and lyrics) and sound recordings (the result of

---

[2/](...continued)
which would justify joinder. Although the Court does not reach the joinder issue, nothing in this order shall be construed as suggesting that Plaintiffs have been properly joined in this action.

[3/]    Don Wilson, is the Vice President and General Manager of ABS, and has been employed by ABS, or its predecessors in interest, since 1994. (Wilson Decl. ¶ 1.) Lawrence Kartiganer is an attorney for Barnaby, and has represented them in legal and business affairs since 1969. (Kartiganer Decl. ¶ 1.) Paul Tarnopol is the president and co-owner of Brunswick. (Tarnopol Decl. ¶ 1.) Thomas J. Couch Sr. is the Chairman of Malaco. (Couch Decl. ¶ 1.)

[4/]    Although CBS has filed an evidentiary objection to portions of paragraph 6 of each of these declarations, the Court has not relied on any of the disputed statements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

fixation of a specific performance of a song). See 17 U.S.C. §§ 101, 102. While songs have a long history of federal copyright protection, sound recordings only became eligible for federal copyright protection in 1971, when Congress amended the scope of the Copyright Act to cover sound recordings fixed after February 15, 1972. Sound Recording Act of 1971, Pub. L. No. 92-140, 85 Stat. 391. In doing so, Congress expressly reserved protection of sound recordings fixed prior to that date to each individual state. 17 U.S.C. § 301(c).

Federal law comprehensively governs the circumstances in which broadcasters are obligated to pay for the public performance of a post-1972 sound recording. See 17 U.S.C. § 114. Terrestrial broadcasters need not pay any fees for broadcasting post-1972 sound recordings, while non-interactive digital transmitters are statutorily granted a compulsory license which requires the transmitter to make payments to SoundExchange, an entity which collects and distributes royalties collected from such licenses. Id.

In contrast to the comprehensive federal system governing post-1972 sound recordings, the relevant California statutory provision governing pre-1972 sound recordings simply provides:

> The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein until February 15, 2047, as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording.

Cal. Civ. Code § 980(a)(2).

In two recent cases – Flo & Eddie Inc. v. Sirius XM Radio Inc., Case No. 13-5693 PSG and Flo & Eddie Inc. v. Pandora Media, Inc., Case No. 14-7648 PSG – the district court interpreted § 980(a)(2) as including an exclusive public performance right for pre-1972 sound recordings. As a result of these holdings, broadcasters publicly performing a pre-1972 sound recording infringe the rights holder's state law copyright and are therefore liable for damages. This interpretation of § 980(a)(2) is currently on appeal before the Ninth Circuit in Flo & Eddie Inc. v. Pandora Media, Inc., Case No. 15-55287.

### C. Procedural History

On August 17, 2015, ABS filed a putative class action against CBS, alleging that CBS was publicly performing ABS's pre-1972 sound recordings in violation of California state law. A First Amended Complaint ("FAC") was filed on October 29, 2015, adding Barnaby, Brunswick, and Malaco as named plaintiffs. Plaintiffs' FAC alleges claims for: (1) violations of California Civil Code §980(a)(2); (2) misappropriation; (3) violation of California Business & Professions Code § 17200; and (4) conversion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

On December 14, 2015, the Court held a scheduling conference where CBS's counsel informed the Court of a potentially case-dispositive threshold issue which avoided resolution of the issues presented in Sirius and Pandora. The Court issued an Order requiring the parties to brief a summary judgment motion based on CBS's assertion that it "only broadcast digitally re-mastered or re-issued recordings which were created after February 15, 1972; and that their broadcast of such works is governed by federal copyright law rather than California state law." (Docket No. 68.) The parties were specifically instructed to "not address whether California copyright law protects an exclusive right to public performance of pre-1972 sound recordings." (Id.)

Accordingly, CBS now moves for summary judgment, contending that it has only publicly performed post-1972 remastered versions of Plaintiffs' works which are governed by federal copyright law.

**II.    Legal Standard**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); see also Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(c). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252). Otherwise, summary judgment shall be entered.

**III.   Discussion**

The question presented by this Motion asks whether a sound engineer's remastering of a pre-1972 sound recording – through subjectively and artistically altering the work's timbre, spatial imagery, sound balance, and loudness range, but otherwise leaving the work unedited – is entitled to federal copyright protection. Based on the record in this matter, the Court concludes that this question must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

answered in the affirmative. The Court finds that Plaintiffs have not introduced sufficient evidence – and have thus failed to create a genuine dispute of material fact – that CBS has publicly performed 126 of Plaintiffs' works. Accordingly, CBS is entitled to summary judgment.

    **A.    CBS Performed Remastered Versions of Plaintiffs' Pre-1972 Sound Recordings Which Were Sufficiently Original to Qualify as Federally Copyrightable Derivative Works**

The parties generally agree that the United States Copyright Office's Circular No. 56, <u>Copyright Registration for Sound Recordings</u> ("Circular 56") provides useful guidance on the issue before the Court.[5/] Circular 56 states:

> A derivative sound recording is one that incorporates some preexisting sounds that were previously registered or published, or sounds that were fixed, before February 15, 1972. The preexisting recorded sounds must have been rearranged, remixed, or otherwise altered in sequence or character, or there must be some additional new sounds. Further, the new or revised sounds must contain at least a minimum amount of original sound recording authorship. This new authorship is the basis for the copyright claim. . . . Examples of derivative sound recordings that generally can be registered include the following:
>
> •     a remix from multitrack sources
> •     a remastering that involves multiple kinds of creative authorship, such as adjustments of equalization, sound editing, and channel assignment
>
> Mechanical changes or processes applied to a sound recording, such as a change in format, declicking, and noise reduction, generally do not represent enough original authorship to be registered.

(Declaration of Andrew Strabone in Support of Defendants' Motion ("Strabone Decl."), Ex. 4 at 3-4).[6/]

---

[5/]     Although Circulars "do not have the force of statute," they are a "fair summary of the law." <u>Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.</u>, 266 F.2d 541, 544 (2d Cir. 1959). Moreover, The Ninth Circuit has relied on Circulars in other copyright disputes. <u>See, e.g.</u>, <u>In re World Auxiliary Power Co.</u>, 303 F.3d 1120, 1131 n.73 (9th Cir. 2002); <u>Syntek Semiconductor Co. v. Microchip Tech. Inc.</u>, 307 F.3d 775, 779 (9th Cir. 2002).

[6/]     The United States Copyright Office also publishes a Compendium, which contains a helpful characterization of what is required for a derivative sound recording to be copyrightable:

> The terms 'equalization,' 'reverberation,' 'reprocessing,' and

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

  The parties disagree, however, as to the proper interpretation of Circular 56. Plaintiffs stress that to rise to the level of copyrightability, the Circular requires a work's sound to be "rearranged," "remixed," and contain "a minimum amount of original sound recording authorship." (Id.) Absent such changes, Plaintiffs assert that any alterations would simply be "mechanical," precluding a finding that the resulting derivative work is copyrightable. On the other hand, CBS asserts that the Circular recognizes that a derivative sound recording need only be "otherwise altered in . . . character" and can be based on "adjustments of equalization, sound editing, and channel assignment." (Id.)

  To resolve this dispute, the Court relies on bedrock principles of copyright law. "The sine qua non of copyright is originality." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991). The degree of creativity need only be "minimal" or "extremely low; even a slight amount will suffice." Id. The requisite originality does not increase when the new copyrightable work is derivative of a pre-existing work. See Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 521 (7th Cir. 2009) (holding that "the originality requirement for derivative works is not more demanding than the originality requirement for other works"). However, "the variation from the original must be sufficient to render the derivative work distinguishable from its prior work in a[] meaningful manner. Mass. Museum of Contemporary Art Found., Inc. v. Buchel, 593 F.3d 38, 65 (1st Cir. 2010) (internal quotations omitted).

  To ascertain "whether a derivative work meets copyright law's fundamental requirement of originality," the Ninth Circuit requires a showing that: "(1) the original aspects of a derivative work must be more than trivial and (2) the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material." U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1016 (9th Cir.

---

[6]/(...continued)
  're-engineering' refer to contributions that may involve sufficient creative authorship, or may be either mechanical in nature or too minimal to be copyrightable. If the applicant uses one or more of these terms on the application as the sole basis for the claim, the registration specialist will request a more detailed explanation or clarification. Similarly, the term 'remastering' may refer to authorship that is mechanical or too minimal to be copyrightable. . . . If the applicant simply states 'remastering,' 'remixing,' or 'editing' on the application, the registration specialist may request a detailed explanation of the authorship involved and will request that any registrable authorship be described with appropriate copyrightable terms.

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 803.9(F)(3) (3d ed. 2014). The Compendium is entitled to Skidmore deference. Media.net Advert. FZ LLC v. NetSeer, Inc., ___ F. Supp. 3d ___, No. 14-CV-03883-EMC, 2016 WL 141707, at *5 (N.D. Cal. Jan. 12, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

2012).[7] "In some cases, the editing of a previously recorded work may in itself involve such originality as to command copyright, as where it involves such acts as equalizing, changing the highs and lows, providing more bass and treble, adding echo, or abridging by making discretionary and not obvious internal cuts." Pryor v. Jean, No. CV 13-02867 DDP (AJWx), 2014 WL 5023088 at *4 (C.D. Cal. Oct. 8, 2014) (quoting 1 Melville B. Miller and David Nimmer, Nimmer on Copyright § 2.10[A][2][b]).

The Court will consider the parties' evidence of originality, or a lack thereof.

    **1.**    **Evidence of Originality**

CBS has submitted the declaration of William Inglot, a music engineer and producer who personally remastered some version of at least 46 of the sound recordings at issue in this case. (Declaration of William Inglot in Support of Defendants' Motion ("Inglot Decl."), ¶¶ 1, 31.) Mr. Inglot explains that the remastering process is guided by a sound engineer's "personal aesthetic," and that as a result two remastered works will sound noticeably different based on the engineer who is responsible for remastering the work. (Id. ¶¶ 13-14.) A good remaster does not involve the mere "'drag-and-drop' conversion of an analog recording to a new digital format." (Id. ¶ 29.) Whenever Mr. Inglot remastered a work, he made changes such as "adjust[ing] the bass, treble, midrange, and other frequencies on the equalizer to emphasize and deemphasize certain instruments and vocal sections." (Id. ¶ 33) He also made numerous equalization changes and "mastered the loudness profile of each track, to create a balanced, consistent profile across the entire album." (Id. ¶¶ 33-34) He claims that although he does not remember the work he did on the particular recordings at issue in this case, he "never made a simple mechanical transfer of the original master to the new master, with no alterations to the sound recording." (Id. ¶ 34.) Instead, Mr. Inglot "made significant and noticeable alterations and modifications to the acoustic properties of the recordings." (Id.)

CBS also submitted the declaration of Dr. Durand R. Begault, an acoustic engineer and research scientist specializing in forensic investigation of audio evidence. (Declaration of Durand R. Begault in Support of Defendants' Motion ("Begault Decl."), ¶ 1.)[8] Dr. Begault agrees that the remastering process involves subjectivity, originality, and ultimately produces works of art. (Id. ¶¶ 21-27.) Additionally, Dr. Begault explains that:

---

[7]    Plaintiffs' briefing is largely focused on asserting that, for the works at issue in this case, the changes made during the remastering process were trivial. Plaintiffs do not articulate any concrete adverse results to the scope of copyright protection for their pre-1972 Sound Recordings which would result from an unfavorable disposition in this case. However, the possibility of any such harm is wholly within Plaintiffs' control because derivative sound recordings can only be prepared with Plaintiffs' authorization, and the terms of the authorizing contract or license can validly limit the ability of the licensee to create a derivative work. See Section III.B.3.

[8]    Plaintiffs have neither filed any evidentiary objections to Dr. Begault's declaration nor moved to have it stricken.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

> Aesthetic decisions made by a mastering engineer are complex and inter-related, and have to do with the overall sound quality of a recording. This includes: (a) the alteration of the tone color (timbre) of the recording, (b) the spatial imagery of the sounds on a recording (i.e., where the listener believes the sounds are coming from in the stereo field), (c) the relative amplitudes (sound balance) of instruments, vocals, and effects, and (d) the overall amplitude level and range of the entire recording (loudness range).
>
> . . .
>
> Although it is not possible to quantify these aesthetic decisions explicitly, the result of such decisions can be determined in a scientific manner. It is possible to analyze mastered recordings in a comparative manner using signal analysis techniques to determine the objective results of these decisions. Mastering engineers use signal processing tools (in both hardware and software) to alter timbre, spatial imagery, balance, and loudness range to implement their decisions.

(Id. ¶¶ 26, 28.)

Dr. Begault forensically examined sound recordings related to 57 of Plaintiffs' Pre-1972 Sound Recordings. (Id. ¶ 14.) For each of these recordings, CBS not only had records reflecting that the works had been publicly performed, but it had also retained a digital copy of the exact sound recording which was actually broadcasted or streamed. (Id.) For many of the 57 works, CBS's servers contained multiple different sound files for a single musical composition. (Id.)

Dr. Begault compared four factors between Plaintiffs' Pre-1972 Sound Recordings and the version of those musical compositions which CBS had performed: timbre, spatial imagery, sound balance, and loudness range. (Id. ¶ 29.) Based on comparing these factors, Dr. Begault concluded that:

> [T]he sound recordings of each of the performances that plaintiffs claim to own are ***not*** the sound recordings that CBS used. That is the case for ***all 57*** of plaintiffs' claimed songs whose recordings I compared. In other words, ***CBS did not use any version of the sound recordings that plaintiffs' claim to own***. Instead, CBS used different versions of those sound recordings. Based on the results of these tests, the versions that CBS has used are either: (1) "remastered" versions of the sound recordings plaintiffs claim to own; (2) remastered versions of previously-remastered, and thus different, versions of the sound recordings plaintiffs claim to own; or (3) a completely different performance than the sound recording plaintiffs claim to own.

(Id. ¶ 16 (emphasis in original).)

Case 2:15-cv-06257-PA-AGR   Document 104   Filed 05/30/16   Page 9 of 19   Page ID #:3826

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

Moreover, the evidence of originality is not strictly limited to evidence introduced by CBS. Plaintiffs submitted the declaration of Paul Geluso, an expert in music technology who has worked as a recording engineer. (Declaration of Paul Geluso in Support of Plaintiffs' Opposition ("Geluso Decl."), ¶ 1.) Mr. Geluso agrees that the remastering process requires subjective choices, involving matters of taste, which alter perceptible aspects of a sound recording. (See id. ¶¶ 26-28.) Mr. Geluso also found that "Mr. Inglot provided a highly informative report regarding the role of the mastering engineer and the process a sound recording undergoes when re-mastering occurs. It is clear that many of the CBS Sound Files were not only re-mastered, but later underwent additional processing before being loaded onto CBS's servers." (Id. ¶ 19.) Additionally, in his deposition, Mr. Geluso stated not only that he agreed with Dr. Begault's findings that there were differences in equalizations, spatial imagery, and loudness range between Plaintiffs' works and those performed by CBS, but that his own independent tests had also shown the same differences. (See Declaration of Amit Gressel in Support of Defendants' Reply ("Gressel Decl."), Ex. E at 122-23; Declaration of Amit Gressel in Support of Defendants' Notice of Errata ("Gressel Errata Decl."), Ex. E at 190.)

Finally, in their depositions, Plaintiffs themselves also agreed that a sound engineer's choices made during the remastering process are creative and subjective. (See Gressel Decl., Ex. C at 80 ("[T]he mixing engineer at least has to decide the levels of each track. Which vocal performances do you want. Which instruments do you want. When do you want them out. There's a lot of latitude at that point in the production process."), Ex. B at 60, 75.)

### 2. Plaintiffs' Evidence of a Lack of Originality

By contrast, Plaintiffs' Opposition contends that "to the extent that CBS publicly performed remastered copies of Plaintiffs' pre-1972 sound recordings, such remastered copies were simply digital conversions optimized for the digital formats using only mechanical processing. CBS does not offer any evidence that any of the remastered copies of Plaintiffs' pre-1972 sound recordings in its possession have been remixed, edited, re-arranged, altered or modified with new sounds. Thus, the remastered copies are not subject to federal copyright protection." (Opp'n, 9.)

To support these propositions, and create a genuine dispute as to the facts demonstrating originality, Plaintiffs rely primarily on the testimony of their music technology expert, Mr. Geluso. CBS filed evidentiary objections to paragraphs 12, 13-18, and 32-95 of Mr. Geluso's declaration. (CBS's Statement of Evidentiary Objections, 13-15, 19.) In paragraphs 13-18 of his declaration, Mr. Geluso criticizes the methodology employed by Dr. Begault.[9/] In paragraphs 32-95, Mr. Geluso explains his

---

[9/] In paragraph 12 of his declaration, Mr. Geluso claims that: "Dr. Begault's analysis is incomplete. In his declaration, he included analysis for only 127 of the 202 sound recordings in the CBS Sound Files that contain identical performances to the sound recordings owned by the Plaintiffs. He provided supportive visual exhibits for only 46 of the 127 sound recordings he examined." (Geluso Decl. ¶ 12.) However, in his deposition, Mr. Geluso explained that he was not provided the entirety of Dr. Begault's report, and that he would not have included paragraph 12 had he been provided the full report. (Gressel
(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

competing methodology for comparing the sound recordings at issue in this case, and provides a conclusion as to the similarity between Plaintiffs' Pre-1972 Sound Recordings and the version CBS performed. For all but nine of the works, Mr. Geluso concluded that CBS performed a version which "embodied" the same performance as Plaintiffs' Pre-1972 Sound Recordings.

CBS objects to Mr. Geluso's testimony on the grounds that it is irrelevant, unscientific, based on unreliable methodology, and lacks adequate foundation as expert testimony. As context for these objections, it is worth recounting what Mr. Geluso did during his testing: Mr. Geluso examined the sound recordings by performing waveform and spectral analysis, as well as critically listening to them – a technique which is unexplained in Mr. Geluso's declaration but appears to involve listening while also paying attention. (See Geluso Decl. ¶ 10; Gressel Decl., Ex. E at 93-94.) While Mr. Geluso would "critically listen" to all of a recording, his actual scientific testing was limited to, in most instances, the first five seconds of each recording. (Gressel Decl. Ex. E at 228.) Mr. Geluso's report also includes graphs taken from his testing software which serve as visual exhibits demonstrating his scientific testing. (Geluso Decl. ¶ 35.) However, in his deposition, Mr. Geluso could not provide an opinion as to the similarities or differences between sound recordings based only on his own graphs, protesting that he needed access to his full computer workstation. (Gressel Decl., Ex. E at 258-59, 267, 269.) Moreover, Mr. Geluso excluded from his report results from the first test he attempted – an "industry standard" known as phase inversion testing – which revealed differences in the first several works which Mr. Geluso compared. (Gressel Decl. Ex. E at 192-94, 203-206.) Mr. Geluso then abandoned this methodology and did not directly disclose the results in his report. (Id.)

Based on the foregoing, the Court concludes that CBS's evidentiary objections must be sustained. See Fed. R. Evid. 702; Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1993). Any conclusions drawn by Mr. Geluso based on his "critical listening" are unscientific, and are unnecessary to aid a fact finder capable of listening to the sound recordings on his or her own. Moreover, forensically comparing only a five second portion of two sound recordings is clearly inadequate to rule out the possibility that non-trivial differences exist between the works. Finally, Mr. Geluso's testimony is unscientific because he failed to disclose in his report the findings from his initial phase inversion testing, which were adverse to Plaintiffs' position. See Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp., 2003 WL 1797844, at *2 (N.D. Ill. Apr. 3, 2003). Alternatively, the Court finds Mr. Geluso's testimony is irrelevant. As such, the Court will disregard the objected to portions of Mr. Geluso's declaration.

Excluding Mr. Geluso's testimony, Plaintiffs have not offered sufficient evidence to create a genuine dispute of material fact as to the amount of originality added during the remastering process. Plaintiffs have not, for instance, lodged with the Court a copy of the sound recordings which the parties' experts compared. Cf. Maljack Prods., Inc. v. UAV Corp., 964 F. Supp. 1416, 1428 (C.D. Cal. 1997), aff'd sub nom. Batjac Prods. Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223 (9th Cir. 1998) ("[T]he Court listened to the soundtrack of both works. . . .").

---

[9]/(...continued)
Decl., Ex. E at 154-157, 165, 169.) Accordingly, the Court will disregard the statement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

### 3. Analysis

Plaintiffs repeatedly stress that a change in a work's medium of expression is not, by itself, sufficient to confer copyright protection. See Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 909 (2d Cir. 1980). In accord with this principle, the Court's consideration focuses on the original expression contained in the remastered recordings, and is not based on the mere conversion of the pre-1972 Sound Recordings into a different format.

An instructive case on the requisite amount of originality is Maljack. There, the plaintiff created a "pan and scan" version of a motion picture, and edited the original work's "monaural soundtrack by remixing, resequencing, sweetening, equalizing, balancing, and stereoizing it, and also added entirely new sound material." Maljack, 964 F. Supp. at 1418. The court found that a "'derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed or otherwise altered in sequence or quality' is a protectable new work." Id. at 1428 (quoting 17 U.S.C. § 114(b)). The court also found that the plaintiff's alteration to the soundtrack "required a "creative mixing and balancing of sounds." Id. The court held that these sound enhancement were original material which was protectable under federal copyright law. Id.

Here, the Court finds that there is no genuine dispute that, during the remastering process, at least some perceptible changes were made to Plaintiffs' Pre-1972 Sound Recordings. As a result, the instant case is readily distinguishable from many of the cases cited in Plaintiffs' Opposition. See Durham, 630 F.2d at 908 (finding insufficient originality in a "virtually indistinguishable" version); Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1222 (9th Cir. 1997) (finding insufficient originality where any differences were "merely trivial"); L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 489 (2d Cir. 1976) ("Many of these differences are not perceptible to the casual observer."); Agee v. Paramount Commc'ns., Inc., 853 F. Supp. 778, 786 (S.D.N.Y. 1994) (finding insufficient originality in a sound recording which, aside from a transfer to a new medium, was unchanged); U.S. v. Taxe, 380 F. Supp. 1010, 1013 (C.D. Cal. 1974) (finding insufficient originality where changes to the sound recording were "insubstantial to the human ear and were intended to be so").

Plaintiffs also heavily rely on Capitol Records, Inc. v. Naxos of Am., Inc., 830 N.E.2d 250 (N.Y. 2005). There, Naxos converted, without authorization, Capital Record's pre-1972 sound recordings from their original shellac record format onto compact discs. Id. at 252. Naxos then argued, as a defense to a claim of copyright infringement, that it had created a "new product." Id. at 267. The court found this argument to be analogous to a "fair use" defense, which as a general rule is unassertable when an entire copyrighted work is reproduced in the allegedly infringing work. Id. As a result, the court held that, as a matter of New York law, the new product defense failed. Id.

However, Naxos is clearly distinguishable in two important regards. First, Naxos did not address whether any original expression was added during the remastering process, and, if so, whether that original expression was sufficient to qualify for federal copyright protection. As such, Naxos does not address the issue before the Court in this motion. Second, the remastered works at issue in Naxos were created without Capital Record's authorization. Here, by contrast, it is undisputed that the remastered

Case 2:15-cv-06257-PA-AGR   Document 104   Filed 05/30/16   Page 12 of 19   Page ID #:3829

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

sound recordings which CBS actually performed were created pursuant to authorization from either Plaintiffs or their predecessors in interest.

Accordingly, the Court finds that on the record before it, Plaintiffs' pre-1972 Sound Recordings have undergone sufficient changes during the remastering process to qualify for federal copyright protection. For example, for Ace Cannon's "Tuff," Dr. Begault found that the CBS version had additional reverberation, was played in a different musical key and at a faster tempo, and differed in the musical performance. (Begault Decl. ¶ 66.) Additionally, many of the remastered versions included different channel assignments and adjustments in equalization. (E.g., id. ¶¶ 77, 80, 85, 91.) In the terms identified in Circular 56, these differences between the recordings – which were explained by Mr. Inglot and objectively measured by Dr. Begault – are not merely "mechanical changes or processes … such as a change in format, de-clicking, and noise reduction." (Strabone Decl. Ex. 4 at 3-4.) Nor are the changes "trivial," as evidenced by Plaintiffs' repeated decisions to have experienced sound engineers remaster their works. Instead, the changes reflect "multiple kinds of creative authorship, such as adjustments of equalization, sound editing, and channel assignment." (Id.)[10]

In sum, Plaintiffs have failed to create a genuine dispute of material fact as to whether the versions of Plaintiffs' works performed by CBS included sufficient originality to qualify for a federal copyright. For the 57 works reviewed by both parties' experts, the Court finds that the changes made during the remastering process were original within the meaning of the Copyright Act, and are thus entitled to federal copyright protection.

B.  **Plaintiffs' Additional Arguments**

At the end of Plaintiffs' Opposition, they briefly raise four additional arguments which purportedly defeat summary judgment. (Opp'n, 23-25.) However, as explained below, none have merit.

1.  **Derivative Works Based on Pre-1972 Sound Recordings** [11]

Plaintiffs first contend that a pre-1972 sound recording governed by state copyright law cannot be converted into a post-1972 derivative work governed by federal law. (Opp'n, 23.) In Plaintiffs' view, this is because their pre-1972 Sound Recordings cannot be copyrighted under the Copyright Act, and

---

[10] Plaintiffs also assert a policy based argument that an adverse ruling in this case will result in potentially endless extension of copyright protections for pre-1972 Sound Recordings as they are remastered into new formats. (Opp'n, 21.) Plaintiffs' concerns are unwarranted because the Court's finding of copyrightable originality is based not on a mere conversion between formats, but on the original expression added by a sound engineer during the remastering process. Such original expression is entitled to copyright protection, regardless of whether the underlying work was fixed before or after 1972.

[11] The Court received an amicus curiae brief, filed by iHeartMedia, Inc., on this point, to which Plaintiffs have filed a responsive brief. (Docket Nos. 97, 102.)

Case 2:15-cv-06257-PA-AGR   Document 104   Filed 05/30/16   Page 13 of 19   Page ID #:3830

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

therefore cannot serve as a "pre-existing work" which can be the basis for a derivative work. Plaintiffs' argument is based largely on Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068 (9th Cir. 2000).

In Ets-Hokin, the Ninth Circuit considered whether photographs of a vodka bottle were original works or merely derivative of the bottle itself. Ets-Hokin, 225 F.3d at 1079. The Ninth Circuit found that the photographs must be original works because the bottle shape could not be copyrighted, and thus could not serve as the preexisting work for a derivative work's copyright. Id. at 1079-81. The Court also found that a preexisting work need only come within the general subject matter of copyright, and need never have actually been copyrighted. Id. at 1079.

Here, there is no dispute that the preexisting works – Plaintiffs' pre-1972 Sound Recordings – are within the general subject matter of copyright. See 17 U.S.C. § 102. The sound recordings are thus wholly unlike the Ets-Hokin vodka bottle, which the Ninth Circuit determined was a useful article not entitled to copyright protection. Ets-Hokin, 225 F.3d at 1080. Even more fundamentally, Plaintiffs' argument is unpersuasive because "[s]ound recordings are 'derivative' works of the preexisting musical composition . . . ." TufAmerica, Inc. v. Codigo Music LLC, ___ F. Supp. 3d ___, 2016 WL 626557, at *15 (S.D.N.Y. Feb. 16, 2016). As such, the Court concludes that the exclusion of pre-1972 Sound Recordings from protection under federal law does not preclude a finding that derivative works based on pre-1972 Sound Recordings are federally copyrightable.

### 2. Independent Copyrightability

Second, Plaintiffs assert that "any changes during the remastering process are not independent and original expression entitled to protection" because "removing Plaintiffs' original sound recording from the remastered copy would leave nothing to perceive." (Opp'n, 23-24.) However, each of the cases cited by Plaintiffs stand only for the general proposition that for a derivative work to be copyrightable, "there must be at least some substantial variation [from the underlying work], not merely a trivial variation." E.g., Woods v. Bourne Co., 60 F.3d 978, 990 (2d Cir. 1995) (brackets in original) (citing L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490 (2d Cir. 1976) (en banc)). Plaintiffs have not identified any cases supporting the wholly separate conclusion that a derivative work is not copyrightable if the original contributions in the derivative work are not perceptible after removing the original work. Further, Plaintiffs' position is belied by the undisputed fact that a remixed derivative sound recording is entitled to copyright protection. Were Plaintiffs' position correct, such a work would be unprotectable.

More importantly, Plaintiffs have not adduced compelling evidence from either Dr. Begault or Mr. Inglot which supports their assertion that there would be nothing perceptible after removing Plaintiffs' original work from the derivative works at issue in this case. In the relied upon portion of Dr. Begault's deposition, he answers that in a hypothetical scenario where the only change made during the remastering process was a decrease in loudness, there would be nothing left to perceive after removing the original recording's sound. (Declaration of Alan P. Block in Support of Plaintiffs' Opposition ("Block Decl."), Ex. 9 at 161-62.) It follows that in the converse scenario, where loudness was added, such changes could be perceived once the original work was removed. Thus, Plaintiffs' assertions are unsupported by the cited evidence. Even less convincing are the relied upon portions of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

Mr. Inglot's deposition, where the Court has only been provided with a vague and context-less discussion about a car's polishing silver and salt in a soup. (Id., Ex. 8 at 67-68.) Assuming that the car and the soup represent the original work, it seems that Mr. Inglot's deposition testimony also contradicts Plaintiffs' contention because "removing" the car and soup would leave behind the polishing silver and salt – presumably the equivalent of the original expression added during the remastering process.

As such, Plaintiffs' argument is unavailing because it is supported by neither case law nor the record in this matter.

### 3.      Scope of the License

Third, Plaintiffs contend that although they, or their predecessors in interest, authorized sound engineers to create remastered versions of their pre-1972 Sound Recordings, Plaintiffs did not authorize the sound engineers to alter the recordings sufficiently to constitute original and independent expressions. (Opp'n, 24.) "A copyright owner has the exclusive right to 'prepare' and authorize the preparation of 'derivative works based upon the copyrighted work.'" U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1016 (9th Cir. 2012) (quoting 17 U.S.C. § 106(2)); see also 17 U.S.C. § 103(a) ("[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.").

Plaintiffs' evidence that they never granted a license to create derivative works while authorizing the remastering of their sound recordings relies largely on nearly identical statements made in the declarations of Wilson, Kariganer, Tarnopol, and Couch. (Wilson Decl. ¶¶ 6, 9-12; Kartiganer Decl. ¶¶ 6, 9-12; Tarnopol Decl. ¶¶ 6, 9-12; Couch Decl. ¶¶ 6, 9-12.) Each declaration claims that Plaintiffs "never would have permitted a distributor to make any substantial or non-trivial changes to the sound of a Recording" and, "to the best of [the declarant's] knowledge none of the Licenses authorized any of the Distributors to prepare a derivative work." (Id.)

CBS filed evidentiary objections to these portions of the declarations because the testimony is vague, lacks foundation, constitutes an improper legal conclusion, and lacks probative value. (CBS's Statement of Evidentiary Objections, 4-8.) Having reviewed the depositions of Wilson, Kartiganer, Tarnopol, and Couch (Gressel Decl., Exs. A-D), wherein each admits a lack of personal knowledge as to these statements, the Court sustains CBS's evidentiary objections. Additionally, the best evidence of the terms of any of these licenses is the license itself, which Plaintiffs have not offered into evidence. See Schrock v. Learning Curve Int'l, Inc., 586 F.3d 513, 525 (7th Cir. 2009). Plaintiffs' further reliance on declarations from Matthew Johnson and Robert Emmer, two of Plaintiffs' licensees, is unavailing for similar reasons.

Plaintiffs' contractual argument is also fatally defective because it misconstrues the interaction between copyright and contract law in this area. "[T]he right to claim copyright in a noninfringing derivative work arises by operation of law, not through authority from the copyright owner of the underlying work." Id. at 523 (citing 1 Melville B. Miller and David Nimmer, Nimmer on Copyright § 3.06, at 3-34.34). However, "the parties may alter this general rule by agreement." Id. at 524. "'[I]f the pertinent agreement between the parties affirmatively bars the licensee from obtaining copyright

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

protection even in a licensed derivative work, that contractual provision would appear to govern.'" Id. Accordingly, it was Plaintiffs' burden to produce the licenses under which the derivative works were created, and demonstrate that they affirmatively barred the creation of a copyrightable work. See L.A. Printex Indus., Inc. v. Aeropostale, No. CV 08-07085 DDP (Ex), 2010 WL 2813800, at *3 (C.D. Cal. May 5, 2010), rev'd on other grounds sub nom. L.A. Printex Indus., Inc. v. Aeropostale, Inc., 466 F. App'x 590 (9th Cir. 2012). Had Plaintiffs shown that the works which CBS performed were created either without authorization, or pursuant to a license which affirmatively barred the creation of a copyrightable derivative work, Plaintiffs would have defeated CBS's summary judgment motion. However, Plaintiffs have failed to do so.

**4. Infringement**

Fourth, Plaintiffs claim that they retain their common law rights in their pre-1972 Sound Recordings embedded in the derivative works performed by CBS because, under 17 U.S.C. § 103(b), the copyright in the derivative works extends only to the original and independent expression contained therein. (Opp'n, 25.) The Court agrees with this assertion. However, the Court disagrees with Plaintiffs' further conclusion that this results in CBS having infringed Plaintiffs' copyrights. The relevant question is whether CBS had the right to perform the remastered, post-1972 sound recordings.[12] Under federal law, CBS has the right to perform post-1972 sound recordings on terrestrial radio without payment, and to perform them through digital platforms under a statutory compulsory license. 17 U.S.C. § 114. There is no allegation that CBS has failed to comply with any of its royalty payment obligations under federal law. As a result, CBS has only played sound recordings which it had the right to use. See id.; see also Pryor, 2014 WL 5023088 at *4 (holding that a licensee's use of a remastered sound recording did not infringe the original sound recording).

---

[12]   This question is obscured by the parties' dispute as to whether any entity has sought federal copyright protection for any of the remastered works which CBS performed. Plaintiffs contend that CBS has no admissible evidence as to the issue, and have thus filed evidentiary objections to paragraphs 13, 14-38, 40-47, 50-69 and 71-72 of the Neiman Declaration, as well as paragraphs 10, 11-24, and 26-32 of the Sottolano Declaration. In the objected to paragraphs, Neiman and Sottolano testified that, based on information contained in the liner notes of the compact discs on which the remastered recordings had been released, various entities had claimed a federal copyright in the remastered versions of Plaintiffs' pre-1972 Sound Recordings. At their depositions, however, both Neiman and Sottolano admitted that they were generally unfamiliar with copyright notices, never reviewed the copyright notices for the works at issue in this case, and lacked personal knowledge to make the statements in their declarations. (See Block Decl., Ex. 4 at 144-146, 153-160; Ex. 5 at 99-110.) Accordingly, the Court concludes that Plaintiffs' Evidentiary Objections to this evidence must be sustained. However, whether or not copyright registration was actually sought is irrelevant to the inquiry before the Court. Cipes v. Mikasa, Inc., 346 F. Supp. 2d 371, 373 n. 1 (D. Mass. 2004) ("[C]opyright registration is irrelevant to the question of whether a valid copyright exists . . . .").

Case 2:15-cv-06257-PA-AGR   Document 104   Filed 05/30/16   Page 16 of 19   Page ID #:3833

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

      **C.**      **Plaintiffs Have Failed to Provide Evidence that CBS Performed 126 of Plaintiffs' Sound Recordings**

     Even if the Court had reached the opposite conclusion in Section III.A-B, supra, CBS would still be entitled to partial summary judgment as to 126 of Plaintiffs' pre-1972 Sound Recordings. Plaintiffs' FAC included Schedules A1-A4, which identified 174 "representative samples" of Plaintiffs' pre-1972 Sound Recordings which had allegedly been infringed. (Block Decl. ¶ 3, Ex. 1.) Plaintiffs each admitted, through interrogatory responses, that they possess "no actual, first-hand knowledge of which of the pre-1972 sound recordings listed on [Schedules A1-A4] CBS publicly performed in California after August 17, 2011." (Strabone Decl. Ex. 9 at 4-5, Ex. 10 at 4-5, Ex. 11 at 4-5, Ex. 12 at 5.) As such, Plaintiffs have relied on CBS's own records and third party reports to show that CBS has publically performed the Pre-1972 Sound Recordings. (See Block Decl. ¶¶ 4-21.)

      **1.**      **CBS's Records**

     CBS maintains a Digital Audio Library, which CBS internally refers to as Radio 2.0. (Declaration of Seth Neiman in Support of Defendants' Motion ("Neiman Decl."), ¶ 2.) After reviewing the Radio 2.0 records for the four years prior to the filing of the Complaint, Seth Neiman determined that CBS had played 60 songs with a title and artist matching an entry identified in Plaintiffs' Schedules. (See id. ¶¶ 8-11; Block Decl. ¶¶ 7-11.) As previously discussed, CBS also identified 57 recordings which it may have played, and for which it had a copy of the sound recording actually broadcasted or transmitted by CBS. (Id. ¶ 4.)

     The parties' experts reviewed these 57 sound recordings when compiling their reports. For nine works – Al Green's "Lets Stay Together"; Jackie Wilson's "I'm Comin On Back To You"; Mahalia Jackson's "His Eye Is On The Sparrow," "In The Upper Room," and "Silent Night"; Otis Clay's "That's How It Is"; The Chordettes' "Born To Be With You"; The Crickets' "Oh Boy"; and The Everly Brothers' "Like Strangers" – there is no disagreement among the parties that the version publicly performed by CBS is an entirely different performance from Plaintiffs' pre-1972 Sound Recording. (See Geluso Decl. ¶¶ 41, 50, 63-66, 78, 80, 85; Begault Decl. ¶¶ 70, 71, 75, 81, 90, 99, 119-21.) Accordingly, partial summary judgment is appropriate as to these nine works. As for the three works identified in the Radio 2.0 records but not examined by the parties' experts, the Court concludes that they must be analyzed in the same manner as the works identified in the third party reports.

      **2.**      **Third Party Reports**

     During discovery, CBS also produced records for the time period between October 2011 to August 2015 referred to as the "Triton Reports" (Block Decl. ¶ 20.) Plaintiffs contend that the Triton Reports provide evidence that 90 of Plaintiffs' pre-1972 Sound Recordings, some of which were not identified in Schedules A1-A4, were publicly performed by CBS. (Id. ¶ 21.) CBS informed Plaintiffs that the Triton Reports are not generated by CBS, CBS does not know how or with which programs the Triton Reports are compiled, and CBS has insufficient knowledge to explain the meaning of the information contained in two of the Triton Reports' columns. (Block Decl. Exs. 6, 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

      As a result, CBS has filed evidentiary objections to Plaintiffs' reliance on information contained in the Triton Reports, on the grounds that the Triton Reports contain inadmissible hearsay not subject to any exception and lack foundation. (CBS's Statement of Evidentiary Objections, 2.) Under the Federal Rules of Evidence, business records are admissible when a custodian of records or other qualified witness can show that the records are: "(1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy, with neither the source of information nor method or circumstances of preparation indicating a lack of trustworthiness." United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988); Fed R. Evid. 803(6). The Court finds that the Triton Reports constitute inadmissible hearsay because Plaintiffs have failed to establish any of the requirements necessary for them to be admitted under the business records exception. Plaintiffs have also failed to provide adequate foundation for the introduction of the Triton Reports. Accordingly, CBS's evidentiary objections are sustained, and the Court will not consider the Triton Reports, or the portions of Plaintiffs' counsel's declaration relying on the Triton Reports.

      However, even if the Court were to consider the Triton Reports, partial summary judgment as to the works exclusively listed in the reports would still be appropriate. The Triton Reports provide some evidence that CBS performed 90 of Plaintiffs' pre-1972 Sound Recordings. (Block Decl. ¶ 21.) Of these 90 sound recordings, 50 were previously disclosed in CBS's records. (Compare id., with id. at ¶¶ 7-11.) As a result, the Triton Reports provide some evidence that CBS performed an additional 40 works belonging to Plaintiffs.

      However, Plaintiffs cannot create a genuine dispute of material fact that CBS performed Plaintiffs' pre-1972 Sound Recordings by only demonstrating that CBS publicly performed a sound recording which has the same title and artist as one of the works owned by Plaintiffs. Music labels occasionally require artists to create multiple sound recordings based on the same musical composition. (See Gressel Decl. Ex. D at 100.) Without affirmative knowledge that no additional sound recordings were created after 1972, it is impossible to conclude from nothing more than an artist and a song title whether the work is in fact a pre-1972 Sound Recording. (See Gressel Errata Decl. Ex. B at 77-79; see also Geluso Decl. ¶ 10.) This conclusion is supported by the nine previously identified works for which the parties agreed that the version publicly performed by CBS was a different performance from Plaintiffs' pre-1972 Sound Recording. Absent the comparative analysis conducted by the parties' experts which confirms that CBS performed a pre-1972 Sound Recording, the Court cannot conclude that CBS performed a sound recording owned by Plaintiffs from nothing more than a song title and artist listed in a report. Accordingly, even if the Triton Reports were admissible, the information contained in them would be insufficient to carry Plaintiffs' burden of demonstrating that CBS performed their pre-1972 Sound Recordings. Therefore partial summary judgment is also appropriate as to the 40 works identified only in the Triton Reports and not in CBS's other records.[13/]

---

[13/]    Plaintiffs also rely on a report from a third-party entity known as MediaBase, which Plaintiffs allege provides evidence that CBS performed 13 of Plaintiffs' pre-1972 Sound Recordings. (See Block Decl. ¶¶ 12-15, 17.) CBS has objected to Plaintiffs' reliance on the MediaBase report on the same

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

In an attempt to avoid this conclusion, Plaintiffs rely on a line of cases holding that merely making copyrighted works available violates the copyright owner's distribution rights. E.g., Hotaling v. Church of Jesus Christ of Latter- Day Saints, 118 F.3d 199 (4th Cir. 1997). However, this line of cases has largely been criticized as inconsistent with the text of 17 U.S.C. § 106(3). See Atl. Recording Corp. v. Howell, 554 F. Supp. 2d 976, 982-83 (D. Ariz. 2008) (collecting cases); see also Fox Broad. Co. v. Dish Network LLC, No. CV-12-4529 DMG (SHx), 2015 WL 1137593, at *21 (C.D. Cal. Jan. 20, 2015) (holding that "merely 'making available' copyrighted programming . . . does not amount to distribution without actual dissemination."). Accordingly, the Court finds Plaintiffs' "making available" argument to be unpersuasive because it relies on a dubious interpretation of federal copyright law, under which Plaintiffs clearly lack any protection in the first place.

### 3.  The Remaining Sound Recordings

Finally, CBS is clearly entitled to summary judgment for any works identified in Plaintiffs' Schedules, but for which Plaintiffs have not introduced any evidence whatsoever. Plaintiffs have put forth deficient evidence as to 100 of their 174 pre-1972 Sound Recordings. (see Block Decl. ¶ 23.) Accordingly, summary judgment is appropriate as to the remaining 74 sound recordings.

### Conclusion

For the foregoing reasons, the Court grants CBS's Motion for Summary Judgment. Specifically, the Court finds that:

- For 48 of the 57 works examined by the parties' experts, there is no genuine dispute of material fact that CBS performed a post-1972 version of Plaintiffs' pre-1972 Sound Recordings which contained federally-copyrightable original expression added during the remastering process.

- For the remaining 9 works examined by the parties' experts, there is no genuine dispute of material fact that the sound recording performed by CBS contained an entirely different performance of the underlying musical composition than Plaintiffs' pre-1972 version.

- For the 117 works identified in Schedules A1-A4 which were not examined by the parties' experts, CBS is entitled to summary judgment because the only evidence which Plaintiffs have put forth demonstrating that CBS performed these works is inadmissible and, even if it were admissible, is insufficient to create a genuine dispute of material fact

---

[13]/(...continued)
grounds as the Triton Reports. The Court sustains CBS's objection on hearsay and foundation grounds. The Court also concludes, just as with the Triton Reports, that the information contained in the MediaBase report is insufficient evidence to demonstrate that CBS performed one of Plaintiffs' pre-1972 Sound Recordings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-6257 PA (AGRx) | Date | May 30, 2016 |
|---|---|---|---|
| Title | ABS Entertainment, Inc. v. CBS Corporation, et al. | | |

that the version of the musical composition actually performed by CBS was one of Plaintiffs' pre-1972 Sound Recordings.

The Court will issue a Judgment consistent with this order.

IT IS SO ORDERED.[14/]

---

[14/] The Court has sustained all of Plaintiffs' evidentiary objections. Unless otherwise noted, the Court has not relied on any evidence to which any party has filed an evidentiary objection. As such, CBS's remaining evidentiary objections to evidence which has not been relied on by the Court, are overruled as moot.